UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| E-BRANDS RESTAURANTS, LLC, et al., | Case No. 8:10-bk-18282-KRM |
| | (Jointly Administered Under Case No. 8:10-bk-18282-KRM) |
| Debtors. | *(Emergency Preliminary Hearing Set August 6, 2010 at 11:00 a.m.)* |

_____/

## DEBTORS' EMERGENCY MOTION FOR INTERIM ORDER AUTHORIZING CONSENSUAL USE OF CASH COLLATERAL WITH GENERAL ELECTRIC CAPITAL CORP. AND GENERAL ELECTRIC CAPITAL BUSINESS ASSET FUNDING CORP. OF CONNECTICUT *NUNC PRO TUNC* TO THE PETITION DATE

**A hearing on this Motion will be held on August 6, 2010 at 11:00 a.m., in Courtroom 9B, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida, before the Honorable K. Rodney May, Bankruptcy Judge**

Debtors, E-Brands Restaurants, LLC ("**E-Brands**"), Timpano of Maryland, LLC

("**Timpano Maryland**"), Timpano Acquisition, LLC ("**Timpano Acquisition**"), Samba

Room Acquisition, LLC ("**Samba Acquisition**"), Aquaknox, LLC ("**Aquaknox**") and

Star Concepts Acquisition, LLC ("**Star Acquisition**") (collectively, "**Debtors**")[1], by and

through their undersigned counsel, hereby file their Emergency Motion for Interim Order

Authorizing Consensual Use of Cash Collateral with General Electric Capital Corp. and

---

[1] E-Brands Restaurants, LLC f/k/a E-Brands Acquisition, LLC, d/b/a Canonita Express; Timpano of Maryland, LLC d/b/a Timpano Italian Chophouse & Martini Bar, d/b/a Timpano Italian Chophouse, d/b/a Timpano Chophouse; Timpano Acquisition, LLC d/b/a Timpano Italian Chophouse & Martini Bar, d/b/a Timpano Italian Chophouse, d/b/a Timpano Chophouse; Samba Room Acquisition, LLC d/b/a Timpano Italian Chophouse & Martini Bar, d/b/a Timpano Italian Chophouse, d/b/a Timpano Chophouse, f/d/b/a Samba Room, d/b/a Samba Room; Aquaknox, LLC f/k/a Aquaknox Atlanta, LLC, d/b/a Aquaknox Global Water Cuisine, d/b/a Aquaknox; Star Concepts Acquisition, LLC d/b/a Aquaknox Global Water Cuisine, d/b/a Aquaknox, d/b/a Taqueria Canonita.

General Electric Capital Business Asset Funding Corp. of Connecticut ("**Motion**") and, in support of their Motion, say:

## Summary of Relief Requested

1.     Prior to the Petition Date (as defined below), the Debtors entered into loan agreements, as amended and modified from time to time, ("**Loan Agreements**") with General Electric Capital Corp. and General Electric Capital Business Asset Funding Corp. of Connecticut, as assignee of General Electric Franchise Finance Corporation (collectively "**GE**"). Under the terms of the Loan Agreements, GE has a blanket lien in the Debtors' assets including the Debtors' cash collateral ("**Cash Collateral**").

2.     The Debtors intend to use the Cash Collateral in the continued operation of their business and in accordance with the thirteen week rolling budget ("**Budget**") attached as Exhibit "1" and by reference incorporated herein.

3.     The Debtors seek the entry of an interim order authorizing the consensual use of Cash Collateral ("**Interim Order**"), *nunc pro tunc* to the Petition Date, to avoid immediate and irreparable harm to the estates pending a final hearing and the entry of a final order. Prior to the Petition Date (as defined below), the Debtors and GE entered into negotiations regarding the Debtors' continued use of cash collateral on a consensual basis. Those discussions were successful. As a result, GE has consented to the Debtors' use of cash collateral for a period of thirty days pending the entry of a final order by this Court authorizing the use of cash collateral. The form of a draft order is presently being circulated and negotiated between the Debtors and GE, and will be uploaded as soon as Exhibit "2" hereto.

4.     The significant provisions of consensual use of cash collateral that will be

incorporated within the Interim Order, which reflect the best terms available to the

Debtors, are as follows:[2]

(a)     Interim Relief. The Order shall be entered authorizing the Debtors' use of cash collateral on an interim basis for a period of thirty days in accordance with the terms and conditions included in the Interim Order ("**Initial Cash Collateral Period**") pending the entry of a final order by this Court;

(b)     Final Relief. The adequate protection granted to GE in the Interim Order shall be approved on a final basis following the submission of a final order by GE and the Debtors;

(c)     Budget. The Debtors' use of Cash Collateral will be consistent with the Budget ("**Budget**"). The Budget includes a five percent (5%) cumulative variance ("**Variance**"), for the first 30 days of the initial thirteen week period beginning August 3, 2010 and ending November 1, 2010;

(d)     Adequate Protection. The following shall constitute good and sufficient adequate protection to GE for the Debtors' use of the Cash Collateral:

(i)     Adequate Protection Liens. The Debtors shall provide GE with replacement liens (the "**GE Replacement Liens**") on substantially all of Debtors' post-petition assets (the "**GE Replacement Collateral**"). The GE Replacement Liens will secure the full amount of the Obligations owing to GE and shall be senior to all other security interests, liens, and rights of setoff in the GE Replacement Collateral.

(ii)     Reporting Requirements. The Debtors shall comply with certain reporting requirements, including providing the Budget or a longer Budget as agreed to by the parties.

---

[2] The summary of the Order is provided for the convenience of the Court and other parties in interest. To the extent there are conflicts between this summary and the Interim Order, the terms of the Order shall govern. Capitalized terms used in the summary but not otherwise defined herein shall have the meaning(s) set forth in the Order.

(e) Carve-Out. The Adequate Protection Liens and the Adequate Protection Claims established under the Order will be subordinate to the following:

    (i) Fees owed or paid to the Clerk of the Court or the United States Trustee; and

    (ii) No more than $75,000 of unpaid and allowed fees and expenses of the Debtors' Professionals incurred during the Initial Cash Collateral Period.

(f) Cash Collateral Termination. Unless GE expressly agrees to the contrary, the Debtors shall no longer be permitted to use Cash Collateral or the Collateral upon occurrence of any of certain termination events more fully described in the Interim Order.

(g) Security Interest Challenge Deadline. The Debtors do not contest the validity, extent, and priority of the GE Pre-Petition Liens. Any party in interest shall file a Security Interest Challenge by not later than sixty days.

### Jurisdiction and Venue

5.    This Court has jurisdiction over this matter pursuant to 28. U.S.C. §§ 157 and 1334. This is a core matter pursuant to 28 U.S.C. § 157. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

6.    The statutory predicates for the relief requested herein are sections 361 and 363 of title 11 of the United States Code ("**Bankruptcy Code**") and Rule 4001, Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**").

### Introduction

7.    The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on July 27, 2010 ("**Petition Date**").

8.    The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases, and no committees have been appointed or designated.

10.      Simultaneously with the filing of this Motion, the Debtors filed their Emergency Motion for Order Directing Joint Administration of Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

## The Debtors' Business

11.      The Debtors currently own and operate the restaurants set forth on the attached Exhibit "3" and by reference incorporated herein.

12.      The Timpano concept is an upscale restaurant offering char-grilled large cut steaks, bone-in chops and fresh pasta. The Aquaknox theme is also upscale highlighted by a water encased walk-in wine tower and a state of the art open kitchen. Aquaknox is known for its culinary excellence in global seafood which is flown in daily. Samba Room presents a menu of award-winning Latin cuisine, grilled meats and fresh seafood. Taqueria Canonita is a concept based on the authentic market place taquerias of Mexico in a casual setting offering a wide variety of tacos, quesadillas made with grilled and fire roasted meats, vegetables and seafood. Canonita Express is located in the food court of the Venetian Resort Hotel Casino. Its menu is similar to Taqueria Canonita, but caters to walk-up clientele desiring authentic Mexican food without having to wait for a table.

## The Debtors' Prepetition Loan Agreements with GE

13.      Except for DBEB, LLC, each of the Debtors is a borrower under the Loan Agreement.

5

14.     The terms of the Loan Agreements provide that the obligations to GE are secured by a first priority interest (the "**GE Pre-Petition Liens**") in substantially all of the Debtors' assets (subject to certain permitted liens).

15.     Exhibit "4" attached hereto sets out the amounts that were outstanding with respect to the Loan Agreements as of the Petition Date:

16.     Subject to the rights of any party in interest, including any appointed official committee of unsecured creditors, the Debtors do not contest GE's assertions that the GE Pre-Petition Liens are valid, enforceable, perfected, non-avoidable, first priority security interests and liens.  Subject to the Security Interest Challenge Deadline, as defined in the Interim Order, the Debtors' agreement not to contest the validity, enforceability, perfection, avoidability, and priority of the GE Pre-Petition Liens in the will be binding upon the Debtors and their bankruptcy estates, all parties in interest in these Chapter 11 cases, including, without limitation, any official committee(s) of unsecured creditors, and their respective successors and assigns.

**GE's Consent to the Relief Requested**

17.     GE consents to the relief requested in this Motion and to the entry of an order pursuant to section 363(a) of the Bankruptcy Code authorizing the Debtors' interim use of Cash Collateral during the Initial Cash Collateral Period in accordance with the Budget and the terms and conditions of the Interim Order.

**Supporting Authority**

18.     Section 363(c)(l) of the Bankruptcy Code provides, in relevant part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 [of the Bankruptcy Code] and

> unless the court orders otherwise, the [debtor] may enter
> into transactions, including the sale or lease of property of
> the estate, in the ordinary course of business, without notice
> or a hearing, and may use property of the estate in the
> ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(l).

19.     Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may
authorize the Debtors to use cash collateral as long as the applicable secured creditors
consent or are adequately protected. *See, e.g., In re Mellor,* 734 F.2d 1396, 1400 (9th Cir.
1984); *see also In re McCormick,* 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006) (to use the
cash collateral of a secured creditor, the debtor must have the consent of the secured
creditor or must establish to the Court that the secured creditor's interest in the cash
collateral is adequately protected). "Cash Collateral" is defined as, "cash, negotiable
instruments, documents of title, securities, deposit accounts or other cash equivalents in
which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a).

20.     As described above, the form of Interim Order to be attached hereto as
Exhibit "2" will reflect the specific terms of the agreement among the Debtors and GE
concerning the Debtors' use of Cash Collateral.

## A.     The Business Judgment Rule Governs the Debtors' Decision to Enter Into the Consensual Cash Collateral Agreement with GE

21.     It is well-established that a debtor in possession's good faith decision to
enter into a consensual use of cash collateral is governed by the business judgment
standard. *See, e.g., In re First NLC Fin. Servs., LLC,* No. 08-10632 [D.E. #232] (Bankr.
S.D. Fla. Feb. 28, 2008) (authorizing debtors' use of cash collateral on a consensual basis
and noting "[t]he use of Cash Collateral and adequate protection arrangements authorized

7

hereunder have been negotiated in good faith and at arm's length, and the terms of such Cash Collateral use and adequate protection arrangements are fair and reasonable under the circumstances [and] reflect the Debtors' exercise of prudent business judgment"); *see also Bergquist v. Felland (In re 0-Jay Foods, Inc.),* 1991 WL 378164, *22 (D. Minn. Nov. 21, 1991) (noting a debtor's decision to concede to lender's cash collateral demand "rather than contesting [the demand] and going into court on a § 363 motion" was "obviously. . . a business and litigation judgment"); *In re Broadway City, LLC,* 358 B.R. 628, 633-34 (Bankr. S.D.N.Y. 2007) ("[C]ash collateral stipulations reflect negotiation and compromise and are intended to give adequate protection only to parties claiming an interest in cash collateral . . . Questions of lien validity often are tabled for future resolution so that the debtor's urgent need for cash can be met and possibly time consuming litigation deferred or avoided."); *In re Tropicana Entm't., LLC,* No. 08-10856 [D.R. #72] (Bankr. D. Del. May 6, 2008) (authorizing debtors' use of cash collateral on a consensual basis and recognizing "the terms of the use of Cash Collateral are fair and reasonable, reflect the [debtors'] prudent exercise of business judgment consistent with their fiduciary duties").

22.     Under the "business judgment" standard, a court will defer to a debtor in possession's business judgment if the debtor in possession acted in good faith, on an informed basis and in the honest belief that the action taken was in the best interest of the company. *See, e.g., In re Friedman's Inc.,* 385 B.R. 381 (Bankr. S.D. Ga. 2008) (The business judgment rule "operates to preclude a court from imposing itself unreasonably on the business and affairs of a corporation.") (citation omitted); *In re Allied Holdings,*

*Inc.*, 337 B.R. 716, 721 (Bankr. N.D. Ga. 2095) (considering, in approving debtor's proposed employee compensation plan, whether "the debtor has used 'proper business judgment' in formulating and proposing the plan and that the plan itself is 'fair and reasonable'"); *Toy King Distribs., Inc. v. Liberty Say. Bank (In re Toy King Distribs, Inc.)*, 256 B.R. 1, 168 (Bankr, M.D. Fla. 2000) ("The business judgment rule is a judicially created presumption that an officer or director has exercised due care in the furtherance of his duties . . . The rule posits a powerful presumption in favor of actions taken by directors in that a decision made by a loyal and informed board will not be overturned by the courts.") (citations and quotations omitted); *see also Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp)* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

23.      Courts generally show great deference to a chapter 11 debtor's decisions when applying the business judgment standard. *See, e.g., Committee of Non-Insider Equity Security Holders v. Evans Prods. Co. (In re Evans Prods. Co.)*, 62 BR, 173, 176 (Bankr. S.D. Fla. 1986) (refusing, where committee challenged debtors' plan of reorganization, to compel the debtors to adopt a competing plan, finding that the court "cannot . . . make that determination [for the debtors] and, even if [it] could, that determination would not foreclose the possibility that the board believes it can defeat the [competing] plan and, therefore, force more advantageous concessions . . . In either event . . . the decision [to pursue the debtors' plan] involved a *business judgment which the*

*board and the board alone is presently authorized to make")* (emphasis added); *see also In re Global Crossing, Ltd.,* 295 B.R. 726, 744 n. 58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the case law.").

24.     Decisions concerning the financing of a debtor's operations in chapter 11 are well within the authority provided to debtors under the Bankruptcy Code to operate their businesses in chapter 11, *see* 11. U.S.C. §§ 363(b), 363(c) and 364(d), and are therefore protected and accorded deference under the business judgment standard. Indeed, as part of a debtor's authority to operate in chapter 11, the Bankruptcy Code authorizes a debtor to seek the use of cash collateral if "each entity that has an interest in such cash collateral consents." 11 U.S.C. § 363(c)(2)(A) (emphasis added).

25.     In permitting a debtor to obtain authority to use cash collateral with the consent of its secured creditors, section 363(c)(2) contemplates that a debtor will engage in arms'-length negotiations with respect to cash collateral. Additionally, because a debtor's use of cash collateral is necessarily linked to its business operations, the consent contemplated by section 363(c)(2) is like any other business decision of a debtor in possession and is entitled to deference as an exercise of the debtor's business judgment. *See, e.g., In re Levitt and Sons, LLC,* 384 B.R. 630 (Bankr. S.D. Fla. 2008) (noting the debtors, "[a]s a last resort . . . heavily negotiated the proposed post-petition financing at arm's-length [sic] and pursuant to the [debtors'] business judgment" and "[t]he terms and provisions of the DIP [financing] are fair and reasonable under the circumstances and

10

reflect the most favorable terms upon which the [debtors] could obtain post-petition financing."); *see also In re LTC Steel Co., Inc.,* 2001 WL 1822360, *3, No, 00-43866 [D.E. #734] (N.D. Ohio Mar. 20, 2001) (allowing debtor to incur postpetition financing and noting "[t]he terms of the [financing are fair and reasonable, reflect the [d]ebtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration"); *In re Beechgrove Redev., L.L.C.,* 2007 WL 4414777, *1-2, No. 07-12057 [D.E. #100] (Bankr. E.D. La. Dec. 13, 2007) (noting "[t]he terms of the DIP Agreement and the use of Cash Collateral, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration" and "[t]he DIP Agreement has been negotiated in good faith between the Debtors and [the DIP lender]").

**B.      The Agreement with GE, As Reflected in the Interim Order, Represents an Appropriate Exercise of the Debtors' Sound Business Judgment**

26.      In this case, the Debtors submit that the terms of the Interim Order, which ensures the Debtors have sufficient liquidity during these chapter 11 cases without the risk of litigation, are reflective of the Debtors' sound business judgment.

27.      Absent authority to use Cash Collateral, the Debtors would be without sufficient liquidity to operate their business, and would suffer immediate and irreparable harm.

28.      It is axiomatic that sound business judgment is exercised where a consensual agreement (as set forth herein) is reached, thereby avoiding immediate and irreparable harm.

11

WHEREFORE the Debtors respectfully request that this Court enter its order:

A.     Granting the Motion;

B.     Determining that the Debtors and their estates would suffer immediate and irreparable harm absent approval of the use of Cash Collateral;

C.     Authorizing the Debtors use of Cash Collateral *nunc pro tunc* to the Petition Date in accordance with this Motion and Interim Order; and

D.     Providing for such other and further relief as the Court deems just and proper.

DATED:   July 30, 2010.

*/s/ Richard C. Prosser*
Richard C. Prosser
Florida Bar No. 354831
Stichter, Riedel, Blain & Prosser, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
Email: rprosser@srbp.com
Attorney for Debtors

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the **Debtors' Emergency Motion for Interim Order Authorizing Consensual Use of Cash Collateral with General Electric Capital Corp. and General Electric Capital Business Asset Funding Corp. of Connecticut** *Nunc Pro Tunc* **to the Petition Date** has been furnished on this 30th day of July, 2010, by either the Court's CM/ECF system or U.S. MAIL, to:

Office of the United States Trustee
Twenty Largest Unsecured Creditors

GE

/s/ Richard C. Prosser
Richard C. Prosser

# EXHIBIT "1"


# E-Brands Restaurants, LLC
## 13 Week Budget

| Fiscal Period | Wk 1 8/3/10–8/9/10 | Wk 2 8/10/10–8/16/10 | Wk 3 8/17/10–8/23/10 | Wk 4 8/24/10–8/30/10 | Wk 5 8/31/10–9/6/10 | Wk 6 9/7/10–9/13/10 | Wk 7 9/14/10–9/20/10 | Wk 8 9/21/10–9/27/10 | Wk 9 9/28/10–10/4/10 | Wk 10 10/5/10–10/11/10 | Wk 11 10/12/10–10/18/10 | Wk 12 10/19/10–10/25/10 | Wk 13 10/26/10–11/1/10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | |
| Customer Receipts | $ 538,848 | $ 538,848 | $ 538,848 | $ 566,837 | $ 577,356 | $ 577,356 | $ 577,356 | $ 577,356 | $ 639,665 | $ 663,942 | $ 663,942 | $ 663,942 | $ 699,747 |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Receipts | $ 538,848 | $ 538,848 | $ 538,848 | $ 566,837 | $ 577,356 | $ 577,356 | $ 577,356 | $ 577,356 | $ 639,665 | $ 663,942 | $ 663,942 | $ 663,942 | $ 699,747 |
| **Disbursements** | | | | | | | | | | | | | |
| Salaries, Wages & Benefits | 396,391 | - | 396,391 | - | 419,871 | - | 419,871 | - | 419,871 | - | 443,721 | - | 443,721 |
| Food | 141,924 | 147,961 | 147,961 | 147,961 | 151,029 | 158,323 | 158,323 | 158,323 | 158,323 | 165,404 | 182,236 | 182,236 | 182,236 |
| Rent & CAM | 215,547 | - | - | - | 231,366 | - | - | - | 240,070 | - | - | - | - |
| Marketing / Advertising | 9,434 | 10,014 | 10,014 | 10,014 | 10,014 | 10,716 | 10,716 | 10,716 | 10,716 | 10,716 | 12,334 | 12,334 | 12,334 |
| Insurance | 9,637 | - | 45,004 | - | 5,299 | - | 145,004 | - | 5,299 | - | 45,004 | - | 5,299 |
| Payment of Sales Tax | - | - | 73,493 | - | 62,407 | - | 70,159 | - | 86,433 | - | - | 106,251 | 69,839 |
| Capital Expenditures | 15,000 | - | - | - | 12,500 | - | 10,000 | 27,500 | - | 5,000 | 5,000 | - | 30,000 |
| Other | 214,422 | 38,805 | 54,201 | 38,805 | 252,868 | 41,523 | 57,966 | 41,523 | 281,181 | 93,523 | 47,795 | 70,584 | 251,703 |
| Professional | 75,000 | - | - | - | 100,000 | - | - | - | 100,000 | - | - | - | 100,000 |
| Total Disbursements | 1,077,355 | 196,781 | 727,065 | 196,781 | 1,245,355 | 210,561 | 881,038 | 238,061 | 1,301,892 | 274,642 | 736,090 | 371,405 | 1,095,232 |
| **Net Cash Flow** | | | | | | | | | | | | | |
| Weekly Net Cash Flow | (538,508) | 342,067 | (188,217) | 370,056 | (667,998) | 366,795 | (303,682) | 339,295 | (662,228) | 389,300 | (72,148) | 292,537 | (395,486) |
| Cumulative Weekly Net Cash Flow | (630,722) | (288,655) | (476,873) | (106,817) | (774,815) | (408,020) | (711,702) | (372,407) | (1,034,635) | (645,335) | (717,483) | (424,915) | (820,431) |
| **Book Balance** | | | | | | | | | | | | | |
| Beginning Book Balance | 300,533 | (237,975) | 104,092 | (84,125) | 285,931 | (382,068) | (15,273) | (318,954) | 20,340 | (641,887) | (252,587) | (324,735) | (32,198) |
| Weekly Net Cash Flow | (538,508) | 342,067 | (188,217) | 370,056 | (667,998) | 366,795 | (303,682) | 339,295 | (662,228) | 389,300 | (72,148) | 292,537 | (395,486) |
| Ending Book Balance | $ (237,975) | $ 104,092 | $ (84,125) | $ 285,931 | $ (382,068) | $ (15,273) | $ (318,954) | $ 20,340 | $ (641,887) | $ (252,587) | $ (324,735) | $ (32,198) | $ (427,683) |

# EXHIBIT "2"

The specific terms within the agreed form of a draft order are presently being circulated and negotiated between the Debtors and GE, and the proposed form of order will be uploaded as soon as the negotiations have been completed.

# EXHIBIT "3"

| DEBTOR | RESTAURANT | LOCATION |
|---|---|---|
| E-Brands | Canonita Express | Las Vegas, NV (The Venetian Resort Food Court) |
| Timpano Maryland | Timpano Italian Chophouse & Martini Bar | Rockville, MD |
| Timpano Acquisition | Timpano Italian Chophouse & Martini Bar | Orlando, FL (Sand Lake Road) |
| | Timpano Italian Chophouse & Martini Bar | Ft. Lauderdale, FL (450 Las Olas Blvd.) |
| Samba Acquisition | Timpano Italian Chophouse & Martini Bar | Tampa, FL (Old Hyde Park) |
| | Samba Room | Orlando, FL (Sand Lake Road) |
| | Samba Room | Ft. Lauderdale, FL (350 Las Olas Blvd.) |
| | Samba Room | Denver, CO (This restaurant will remain closed for approximately eight weeks while it undergoes renovations.) |
| Aquaknox | Aquaknox Global Water Cuisine | Tampa, FL (The Westin on Courtney Campbell Causeway) |
| Star Acquisition | Aquaknox Global Water Cuisine | Las Vegas, NV (The Venetian Resort and Hotel Casino) |
| | Taqueria Canonita | Las Vegas, NV (Grand Canal Shops at the Venetian Resort Hotel Casino) |
| DBEB | Timpano Tavern (formerly the David Burke Restaurant) | Las Vegas, NV (The Grand Canal Shops at the Venetian Resort Hotel Casino) |

EXHIBIT "4"

| Debtor/Primary Obligor | Lender/Current Assignee | Current Balance | Collateral |
|---|---|---|---|
| Samba Acquisition | GECBAFC | $281,172 | Samba Orlando land lease |
| Samba Acquisition | GECBAFC | $330,790 | Samba Orlando equipment |
| Timpano Acquisition | GECBAFC | $281,172 | Timpano Orlando land lease |
| Timpano Acquisition | GECBAFC | $330,790 | Timpano Orlando equipment |
| Timpano Maryland; Timpano Acquisition; Samba Acquisition; Aquaknox; Star Acquisition | GE Capital | $3,062,495 | Equipment, Inventory, accounts, etc. Acquisition Refinance |
| E-Brands; Timpano Maryland; Timpano Acquisition; Samba Acquisition; Aquaknox | GE Capital | $6,582,233 | Equipment, Inventory, accounts, etc. Development LOC |
| Aquaknox | GE Capital | $1,604,576 | Tampa Equipment (need description) |
| **Total** | | **$12,473,228.00** | |