UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| E-BRANDS RESTAURANTS, LLC , | Case No. 8:10-bk-18282-KRM |
| TIMPANO OF MARYLAND, LLC, | Case No. 8:10-bk-18297-KRM |
| TIMPANO ACQUISITION, LLC, | Case No. 8:10-bk-18286-KRM |
| SAMBA ROOM ACQUISITION, LLC, | Case No. 8:10-bk-18290-KRM |
| AQUAKNOX, LLC, | Case No. 8:10-bk-18278-KRM |
| STAR CONCEPTS ACQUISITION, LLC, | Case No. 8:10-bk-18292-KRM |
| DBEB, LLC, | Case No. 8:10-bk-18295-KRM |
| Debtors. | (Jointly Administered Under |
| _____/ | Case No. 8:10-bk-18282) |

**FIRST AMENDED DISCLOSURE STATEMENT FOR THE FIRST AMENDED PLAN OF REORGANIZAZTION FOR E-BRANDS RESTAURANTS, LLC AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION UNDER <u>CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE</u>**

Richard C. Prosser (FBN 354831)
Stephen R. Leslie (FBN 0000349)
Amy Denton Harris (FBN 0634506)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
EMAIL: RPROSSER@SRBP.COM
          SLESLIE@SRBP.COM
          AHARRIS@SRBP.COM

Counsel for the Debtors
and Debtors In Possession

Tampa, Florida
January 31, 2011

THIS FIRST AMENDED DISCLOSURE STATEMENT FOR THE FIRST AMENDED PLAN OF REORGANIZATION FOR E-BRANDS RESTAURANTS, LLC AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE FIRST AMENDED PLAN OF REORGANIZATION FOR E-BRANDS RESTAURANTS, LLC AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE AND NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT SHALL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THE DESCRIPTION OF THE DEBTORS' PLAN OF REORGANIZATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF. **EACH CREDITOR AND HOLDER OF AN INTEREST SHOULD READ, CONSIDER AND CAREFULLY ANALYZE THE TERMS AND PROVISIONS OF THE PLAN.**

THE SOLICITATION OF ACCEPTANCES OF THE PLAN OR THE GIVING OF ANY INFORMATION OR THE MAKING OF ANY REPRESENTATION OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS OR DOCUMENTS ATTACHED HERETO OR INCORPORATED BY REFERENCE OR REFERRED TO HEREIN IS NOT AUTHORIZED BY THE PLAN PROPONENT, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MAY NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTORS. SUCH ADDITIONAL REPRESENTATIONS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTORS, WHO IN TURN WILL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES IMPLY THAT THE INFORMATION HEREIN IS CORRECT AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF. CREDITORS AND HOLDERS OF INTERESTS ARE ENCOURAGED TO REVIEW THE BANKRUPTCY DOCKET IN THIS CASE IN ORDER TO EVALUATE EVENTS WHICH OCCUR BETWEEN THE

DATE OF THIS DISCLOSURE STATEMENT AND THE DATE OF THE CONFIRMATION HEARING. **ALL CREDITORS THAT ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING THE PLAN OF REORGANIZATION AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT, PRIOR TO SUBMITTING A BALLOT PURSUANT TO THIS SOLICITATION.**

IN THE EVENT THAT ANY OF THE CLASSES OF HOLDERS OF IMPAIRED CLAIMS VOTE TO REJECT THE PLAN (1) THE DEBTORS MAY ALSO SEEK TO SATISFY THE REQUIREMENTS FOR CONFIRMATION OF THE PLAN WITH RESPECT TO THAT CLASS UNDER THE SO-CALLED "CRAMDOWN" PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE (11 U.S.C. §1129(b)) AND, IF REQUIRED, MAY FURTHER AMEND THE PLAN TO CONFORM TO SUCH REQUIREMENTS OR (2) THE PLAN MAY BE OTHERWISE MODIFIED OR WITHDRAWN AS PROVIDED THEREIN. THE REQUIREMENTS FOR CONFIRMATION, INCLUDING THE VOTE OF HOLDERS OF IMPAIRED CLAIMS TO ACCEPT THE PLAN AND CERTAIN OF THE STATUTORY FINDINGS THAT MUST BE MADE BY THE BANKRUPTCY COURT, ARE SET FORTH UNDER THE CAPTION "VOTING ON AND CONFIRMATION OF THE PLAN."

APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT INDICATE THAT THE BANKRUPTCY COURT RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN, NOR DOES SUCH APPROVAL CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

**THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND HOLDERS OF INTERESTS. ALL CREDITORS AND HOLDERS OF INTERESTS ARE THEREFORE URGED TO VOTE IN FAVOR OF THE PLAN.** TO BE COUNTED, YOUR BALLOT MUST BE COMPLETED AND EXECUTED AND RECEIVED BY NO LATER THAN THE TIME SET BY THE COURT.

### INDEX TO EXHIBITS TO
### DISCLOSURE STATEMENT

EXHIBIT A          Projections

EXHIBIT B          Liquidation Analysis

EXHIBIT C          Form of Ballot

## DISCLOSURE STATEMENT FOR
## E-BRANDS RESTAURANTS, LLC, ET AL.

E-Brands Restaurants, LLC ("**E-Brands**"), Timpano of Maryland, LLC ("**Timpano Maryland**"), Timpano Acquisition, LLC ("**Timpano Acquisition**"), Samba Room Acquisition, LLC ("**Samba Acquisition**"), Aquaknox, LLC ("**Aquaknox**"), Star Concepts Acquisition, LLC ("**Star Acquisition**") and DBEB, LLC ("**DBEB**") (collectively, "**Debtors**" or the "**Reorganized Debtors**" as the context requires)[1], submit this First Amended Disclosure Statement for the First Amended Plan of Reorganization for E-Brands Restaurants, LLC and its Affiliated Debtors and Debtors in Possession Under Chapter 11 of the United States Bankruptcy Code (the "**Disclosure Statement**") pursuant to Section 1125 (11 U.S.C. §1125) of the Bankruptcy Code, 11 U.S.C. §101, *et seq.* (the "**Bankruptcy Code**"), in connection with the solicitation of votes on the First Amended Plan of Reorganization for E-Brands Restaurants, LLC and its Affiliated Debtors and Debtors in Possession Under Chapter 11 of the United States Bankruptcy Code (the "**Plan**") from holders of impaired Claims against the Debtors and the hearing on confirmation of the Plan scheduled for February 25, 2011, at 9:30 a.m.

This Disclosure Statement is subject to the approval of the Bankruptcy Court in accordance with Section 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of the holders of Claims of the relevant Voting Classes (as defined below) to make an informed judgment whether to accept or reject the Plan. Effort has been made to provide meanings of capitalized and other terms used in this Disclosure Statement. Reference is made to the Plan, however, for the actual meanings of all capitalized and other terms used in this Disclosure Statement and in the Plan and for controlling language with respect to any provision referenced in this Disclosure Statement or in the Plan. Terms used in this Disclosure Statement and in the Plan are defined in Article I of the Plan. In the event of a conflict between the definition of any term or any other provision contained in this Disclosure Statement and the corresponding definition or provision contained in the Plan, the definition or provision contained in the Plan shall control.

In the opinion of the Debtors, the treatment of Claims and Interests under the Plan

---

[1] E-Brands Restaurants, LLC f/k/a E-Brands Acquisition, LLC, d/b/a Canonita Express; Timpano of Maryland, LLC d/b/a Timpano Italian Chophouse & Martini Bar, d/b/a Timpano Italian Chophouse, d/b/a Timpano Chophouse; Timpano Acquisition, LLC d/b/a Timpano Italian Chophouse & Martini Bar, d/b/a Timpano Italian Chophouse, d/b/a Timpano Chophouse; Samba Room Acquisition, LLC d/b/a Timpano Italian Chophouse & Martini Bar, d/b/a Timpano Italian Chophouse, d/b/a Timpano Chophouse, f/d/b/a Samba Room, d/b/a Samba Room; Aquaknox, LLC f/k/a Aquaknox Atlanta, LLC, d/b/a Aquaknox Global Water Cuisine, d/b/a Aquaknox; Star Concepts Acquisition, LLC d/b/a Aquaknox Global Water Cuisine, d/b/a Aquaknox, d/b/a Taqueria Canonita; and DBEB, LLC d/b/a Timpano Tavern, f/d/b/a David Burke Restaurant.

contemplates a substantially greater recovery than that which is likely to be achieved under other alternatives for the reorganization or liquidation of the Debtors. If the Plan is not confirmed, there is a substantial likelihood that unsecured creditors will be left with no recovery at all.

The Debtors believe that confirmation of the Plan is clearly in the best interests of Creditors and Holders of Membership Interests, and strongly recommend that Creditors holding Allowed Claims in the Voting Classes vote to accept the Plan.

## PURPOSE OF DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide the Creditors of the Debtors with adequate information to make an informed judgment about the Plan. This information includes, among other things, the history of the Debtors prior to the filing of the Reorganization Cases under Chapter 11, the events leading to the filing of the Reorganization Cases, a brief summary of significant events to date in the Reorganization Cases, and a summary explanation of how the Plan will function.

This Disclosure Statement contains important information about the Plan and considerations pertinent to a vote for or against the confirmation of the Plan. All holders of Claims and Membership Interests are encouraged to carefully review this Disclosure Statement and the Plan.

## VOTING INSTRUCTIONS

### Who May Vote

Only the holders of Claims and Membership Interests that are deemed "allowed" under the Bankruptcy Code and that are "impaired" under the terms and provisions of the Plan (the **"Voting Classes"**) are permitted to vote to accept or reject the Plan. For purposes of the Plan, only the holders of Allowed Claims in the Voting Classes are impaired under the Plan and thus may vote to accept or reject the Plan. Under the Plan, the Claims classified in Classes 2, 3, 4, and 6 are impaired under the Plan and are entitled to vote to accept or reject the Plan and thus constitute the "Voting Classes" thereunder. If an objection to a claim is pending and unresolved as of the Ballot Deadline, the claimant will not be permitted to vote and any vote cast by a claimant will be disqualified unless the claimant files, prior to the Ballot Deadline, a motion to estimate the claim for voting purposes.

### How to Vote

Each holder of a Claim in a Voting Class should read this Disclosure Statement, together with the Plan and other exhibits, in their entirety. After carefully reviewing the Plan and this Disclosure Statement and their respective exhibits, please complete the enclosed

Ballot, including indicating your vote thereon with respect to the Plan, and return the Ballot as provided below. Please note that your vote and election cannot count unless you return the enclosed Ballot.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact Susan McKee at (813) 229-0144.

**YOU SHOULD COMPLETE AND SIGN THE ENCLOSED BALLOT AND RETURN IT AS DESCRIBED BELOW. IN ORDER TO BE COUNTED, BALLOTS MUST BE DULY COMPLETED AND EXECUTED AND RECEIVED NO LATER THAN 4:00 P.M. (EDT) ON THE DATE FIXED BY THE BANKRUPTCY COURT IN THE ENCLOSED ORDER APPROVING DISCLOSURE STATEMENT AND FIXING DATES FOR CONFIRMATION (THE "BALLOT DEADLINE").**

Completed Ballots should be sent by regular mail, hand delivery, or overnight delivery, **SO AS TO BE RECEIVED NO LATER THAN THE BALLOT DEADLINE,** to:

Clerk of the United States Bankruptcy Court
Sam M. Gibbons United States Courthouse
801 N. Florida Avenue, Suite 555
Tampa, Florida 33602

A copy of the Ballot should also be sent to:

Richard C. Prosser, Esquire
Stichter Riedel Blain & Prosser, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602

**Acceptance of Plan and Vote Required for Class Acceptance**

As the holder of an Allowed Claim in the Voting Classes, your vote on the Plan is extremely important. In order for the Plan to be accepted and thereafter confirmed by the Bankruptcy Court without resorting to the "cramdown" provisions of Section 1129(b) of the Bankruptcy Code as to other classes of Allowed Claims, votes representing at least two-thirds in amount and more than one-half in number of Allowed Claims of each impaired Class of Claims that are voted must be cast for the acceptance of the Plan. The Debtors are soliciting acceptances only from members of the Voting Classes. The Debtors or its agents may contact you with regard to your vote on the Plan.

To meet the requirement for confirmation of the Plan under the "cramdown" provisions of the Bankruptcy Code with respect to any impaired Class of Claims or Membership Interests which votes to reject the Plan (a "**Rejecting Class**"), the Debtors would have to show that all Classes junior to the Rejecting Class will not receive or retain any property under the Plan unless all holders of Claims in the Rejecting Class receive, under the Plan, property having a value equal to the full amount of their Allowed Claims.

## Confirmation Hearing

The Bankruptcy Court has scheduled a hearing for February 25, 2011, at 9:30 a.m. to consider confirmation of the Plan (the "**Confirmation Hearing**"), which may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing. The Bankruptcy Court has directed that any objection to confirmation of the Plan must be in writing and specify in detail the name and address of the objector, the basis for the objection and the specific grounds for the objection, and the amount of the Claim held by the objector. Consistent with Rule 3020(b) of the Federal Rules of Bankruptcy Procedure and Local Rule 3020-1(a), any such objection must be filed with the Bankruptcy Court and served upon each of the following parties, so as to be actually received on or before the deadline set by the Court:

| | |
|---|---|
| Debtors: | Richard C. Prosser, Esquire |
| | Stichter Riedel Blain & Prosser, P.A. |
| | 110 East Madison Street, Suite 200 |
| | Tampa, Florida 33602 |
| | |
| Creditors | Frank P. Terzo, Esquire |
| Creditors Committee: | GrayRobinson, P.A. |
| | 1221 Brickell Ave., Suite 1600 |
| | Miami, FL 33131 |
| | |
| U.S. Trustee: | Theresa Boatner, Esquire |
| | Assistant United States Trustee |
| | 501 East Polk Street, Suite 1200 |
| | Tampa, Florida 33602 |

### HISTORY OF THE DEBTORS

In 2003, E-Brands Restaurants, LLC (formerly E-Brands Acquisition, LLC) ("**E-Brands**") purchased twelve (12) restaurants from Carlson Restaurants Worldwide ("**Carlson**"). Carlson is the parent company of T.G.I. Friday's and Pick-Up Stix Restaurants. The twelve restaurants were located in Dallas and Houston, Texas; Las Vegas, Nevada; Orlando, Ft. Lauderdale and Tampa, Florida; Naperville, Illinois; Denver, Colorado; and

Rockville, Maryland. Following the acquisition, E-Brands expanded (i) in Orlando, Florida by opening Salsa in the Florida Mall; (ii) in Las Vegas by opening Canonita Express and the David Burke Restaurant in The Venetian Resort Hotel Casino; (iii) its Aquaknox brand by opening one restaurant in Atlanta at the Terminus Building and one restaurant in Tampa at the Westin Hotel on Causeway Boulevard. After certain divestitures and closings including, without limitation, the sale of a Samba Room concept restaurant located at 7468 West Sand Lake Road in Orlando, Florida, E-Brands currently owns and operates the following restaurants:

| DEBTOR | RESTAURANT | LOCATION |
|---|---|---|
| E-Brands | Canonita Express | 3355 Las Vegas Blvd. S. Las Vegas, NV 89109 (The Venetian Resort Food Court) |
| Timpano Maryland | Timpano Italian Chophouse & Martini Bar | 12021 Rockville Pike Rockville, MD 20852 |
| Timpano Acquisition | Timpano Italian Chophouse & Martini Bar | 7488 West Sand Lake Rd. Orlando, FL 32819 |
| | Timpano Italian Chophouse & Martini Bar | 450 E. Las Olas Blvd. Ft. Lauderdale, FL 33301 |
| Samba Acquisition | Timpano Italian Chophouse & Martini Bar | 1601 W. Swann Ave. Tampa, FL 33606 |
| | Samba Room | 1460 Larimer St. Denver, CO 80202 |
| Aquaknox | Aquaknox Global Water Cuisine | 7627 W. Courtney Campbell Causeway Tampa, FL 33607 (The Westin on Courtney Campbell Causeway) |
| Star Concepts | Aquaknox Global Water Cuisine | 3355 Las Vegas Blvd. S. Las Vegas, NV 89109 (The Venetian Resort and Hotel Casino) |
| | Taqueria Canonita | 3355 Las Vegas Blvd. S. |

| | | Las Vegas, NV 89109 (Grand Canal Shops at the Venetian Resort Hotel Casino) |
| --- | --- | --- |

The Timpano concept is an upscale restaurant offering char-grilled large cut steaks, bone-in chops and fresh pasta.  The Aquaknox theme is also upscale highlighted by a water encased walk-in wine tower and a state of the art open kitchen.  Aquaknox is known for its culinary excellence in global seafood which is flown in daily.  Samba Room presents a menu of award-winning Latin cuisine, grilled meats and fresh seafood.  Taqueria Canonita is a concept based on the authentic market place taquerias of Mexico in a casual setting offering a wide variety of tacos, quesadillas made with grilled and fire roasted meats, vegetables and seafood.  Canonita Express is located in the food court of the Venetian Resort Hotel Casino.  Its menu is similar to Taqueria Canonita, but caters to walk-up clientele desiring authentic Mexican food without having to wait for a table.

E-Brands Restaurants owns one hundred percent (100%) of the membership interests in Timpano Maryland, Timpano Acquisition, Samba Acquisition, Aquaknox, Star Acquisition, and DBEB.

## EVENTS LEADING TO THE FILING OF THE REORGANIZATION CASES

As noted above, the Debtors embarked on an expansion campaign and incurred significant long-term debt in connection with their expansion.  In addition, the nationwide economic recession has significantly impacted the restaurant industry as a whole, particularly the casual dining segment, as evidenced by the closure of several local and national restaurant chains.  The recession caused a significant decline in the Debtors' net sales and earnings before interest, taxes, depreciation, and amortization, as reflected in the chart below.

| | **2008** | **% of Sales** | **2009** | **% of Sales** |
| --- | --- | --- | --- | --- |
| Net Sales* | $56,674,092 | 100 | $43,772,907 | 100 |
| EBITDA* | $ 3,400,700 | 6.0 | $ 932,988 | 2.1 |

*per audited financial statements

As a result of the foregoing, the Debtors were required to seek Chapter 11 protection to preserve the going concern value of their assets.  Despite these challenges, the Debtors are committed to implementing a strategic plan to restructure their businesses and to continue to provide their loyal customers with the same high quality products, impeccable service, and outstanding value to which they have become accustomed.

## SIGNIFICANT EVENTS TO DATE IN THE REORGANIZATION CASES

Prior to the Petition Date, the Debtors closed an unprofitable Aquaknox concept restaurant in Atlanta and abandoned its leasehold interest as well as the furniture, fixtures, and equipment. During the Reorganization Cases, the Debtors streamlined their operations by closing two restaurants: an unprofitable Timpano Tavern concept restaurant in Las Vegas and an unprofitable Samba Room concept restaurant in Ft. Lauderdale. Following the closure of the Timpano Tavern in Las Vegas and the Samba Room in Ft. Lauderdale, the Debtors rejected the non-residential real property leases and abandoned the furniture, fixtures, and equipment. Also during the Reorganization Cases, the Debtors sold a Samba Room concept restaurant in Orlando. The Debtors assigned their interest in the non-residential real property lease and sold the furniture, fixtures, equipment, and inventory to KJ Entertainment Group, LLC ("**KJ Entertainment**"). The closure of the Timpano Tavern in Las Vegas and the Samba Room in Ft. Lauderdale has contributed to a reduction in approximately Four Hundred Thirty Thousand Dollars ($430,000.00) in annualized general and administrative expenses. The sale of the Samba Room in Orlando contributed Two Hundred Thousand Dollars ($200,000.00) to the Debtors' estates, of which One Hundred Eighty Thousand Dollars ($180,000.00) was paid to GE on account of its first priority lien on the assets of the Samba Room in Orlando.

In addition, sales at the Debtors' two major concepts, Timpano and Aquaknox have stabilized and are showing year to date same store sales increases of 6.38% and 1.77%, respectively. The Debtors have successfully retained key employees while reducing postpetition hourly labor expenses by approximately Eighty-Six Thousand Dollars ($86,000.00). In addition, the Debtors' actual weekly disbursements have consistently been below projected disbursements. All of these improvements indicate that the Debtors are stable and making consistent quarterly strides.

During the Reorganization Cases, the Debtors participated in settlement discussions and mediation with GE, its primary secured creditor, and the Creditors Committee. As a result of these negotiations, the parties were able to reach a global settlement which has resulted in the filing by the Debtors of the First Amended Plan of Reorganization for E-Brands Restaurants, LLC and its Affiliated Debtors and Debtors in Possession Under Chapter 11 of the United States Bankruptcy Code and the treatment of classified claims as set forth below.

## SUMMARY OF PLAN OF REORGANIZATION

### Introduction

The Debtors believe that the Plan provides the greatest possible recovery to the Debtors' Creditors. The Debtors therefore believe that acceptance of the Plan is in the best

interest of each and every Class of Claims and Membership Interests and recommends that the Voting Classes vote to accept the Plan.

A summary of the principal provisions of the Plan is set forth below. This summary is qualified in its entirety by reference to the provisions of the Plan and, to the extent there is any conflict between this summary and the Plan, the language of the Plan will govern. All terms stated in initial capital letters in this summary are defined in the Plan.

Claims and Membership Interests will be treated under the Plan in the manner set forth in Article 5 of the Plan. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Membership Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Membership Interests.

## TREATMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

*Administrative Expenses.* Except as otherwise provided below and in §3.05 of the Plan, each Holder of an Allowed Administrative Expense shall be paid on the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Administrative Expense, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code. Notwithstanding the foregoing, each Holder of an Allowed Administrative Expense may be paid (a) on such other terms as may be agreed upon by the Holder of such Allowed Administrative Expense and the Debtors or Reorganized Debtors or (b) as otherwise ordered by a Final Order of the Bankruptcy Court. The Debtors estimate Administrative Expense Claims at approximately $1.7 million comprised of the following:

| | |
|---|---|
| Cure Claims | $ 601,000 |
| 503(b)(9) Claims | $ 11,000 |
| Professional Fees | $1,000,000 |
| U.S. Trustee Fees | $ 30,000 |
| Ordinary Course Post-Petition Claims | $ 72,000 |

*Priority Tax Claims.* Each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular installment payments in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate

established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law. Notwithstanding the foregoing, each Holder of an Allowed Priority Tax Claim may be paid (a) on such other terms as may be agreed upon by the Holder of such Allowed Priority Tax Claim and the Debtors or Reorganized Debtors or (b) as otherwise ordered by a Final Order of the Bankruptcy Court.

## TREATMENT OF CLASSIFIED CLAIMS AND MEMBERSHIP INTERESTS

*Class 1: Priority Claims.* Each Holder of an Allowed Priority Claim shall receive on the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code. Notwithstanding the foregoing, each Holder of an Allowed Priority Claim may be paid (a) on such other terms as may be agreed upon by the Holder of such Allowed Priority Claim and the Debtors or Reorganized Debtors or (b) as otherwise ordered by a Final Order of the Bankruptcy Court. Class 1 is Unimpaired by the Plan. Accordingly, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

*Class 2: Prepetition PACA Claims.* Class 2 consists of all Allowed Prepetition PACA Claims. To the extent not already paid as of the Confirmation Date, each Holder of an Allowed Class 2 Claim shall receive: (a) fifty percent (50%) of its Allowed Claim on the Effective Date and (b) the remaining fifty percent (50%) of its Allowed Claim within forty-five (45) days of the Effective Date. The post-confirmation payments to the Holders of Allowed Class 2 Claims will be made by the Reorganized Debtors. Class 2 is Impaired by the Plan. Each Holder of an Allowed Prepetition PACA Claim in Class 2 is entitled to vote to accept or reject the Plan.

*Class 3: Secured Claim of AEL.* Class 3 consists of the Allowed Secured Claim of AEL by virtue of a purchase money security interest in point of sale equipment located at 7627 Courtney Campbell Causeway, Tampa, Florida 33607. AEL shall have an Allowed Secured Claim in the amount of Ten Thousand Dollars ($10,000.00). Commencing on the first day of the month following the date which is thirty (30) days after the Effective Date, AEL's Allowed Secured Claim shall be amortized over thirty-six (36) months and paid in principal and interest installments with simple interest thereon at the rate of five percent (5%) *per annum*. There shall be no prepayment penalty. AEL shall retain the liens securing its Class 3 Secured Claim to the extent of the Allowed Amount of such claims. The remaining balance of approximately Fourteen Thousand Dollars ($14,000.00) shall be an Unsecured Claim and shall be treated in accordance with Class 6. The post-confirmation payments to the Holders of Allowed Class 3 Claims will be made by the Reorganized Debtors. Class 3 is Impaired by the Plan. AEL is entitled to vote to accept or reject the Plan.

*Class 4: Secured Claim of GE.* Class 4 consists of the Allowed GE Compromised

Secured Claim by virtue of GE's security interests in the GE Collateral and the agreement between the Debtors, the Creditors Committee and GE for treatment of the Allowed GE Claim. The Allowed GE Compromised Secured Claim shall be treated as follows:

(a)     The Allowed GE Secured Claim may be satisfied in full by payment on the Effective Date of the GE Cash Payment; *or*

(b)     In the event that GE is not paid the GE Cash Payment on the Effective Date, the Allowed GE Compromised Secured Claim shall be treated and paid as follows:

(1)     On the Effective Date, the Reorganized Debtors shall deliver to GE the fully executed GE Amended and Restated Note, the GE Revolver Note, the GE B Note, the GE Amended Loan Documents and the GE Guaranty, copies of which shall be filed with the Court at least fifteen (15) days prior to the Confirmation Hearing;

(2)     the GE Excess Equity Auction Proceeds Share which shall be paid in Cash on the Effective Date; and

(3)     if not received by GE prior to the Effective Date, the Samba Room/Orlando Net Sales Proceeds.

(c)     So long as the Plan is confirmed on terms acceptable to GE in its sole discretion and consistent with the terms contained herein, the remaining balance of the GE Claim which would otherwise be treated as an Allowed Class 6 Unsecured Claim will be waived by GE.

(d)     The foregoing represents a compromise and settlement among the Debtors, the Creditors Committee and GE with respect to the amount of the GE Compromised Secured Claim. In the event of any objection to the Plan, GE reserves the right to withdraw its consent to the Plan, assert its security interest in all of the GE Collateral and the right to all of the proceeds of the Equity Auction and to exercise its credit bid rights at the Equity Auction.

(e)     Class 4 is Impaired by the Plan, and GE, as the Holder of the Allowed Class 4 Claims, is entitled to vote to accept or reject the Plan.

***Class 5: Other Secured Claims.*** Class 5 consists of all Allowed Secured Claims not otherwise classified under the Plan. Each Holder of an Allowed Secured Claim in Class 5 shall receive either the collateral securing such Allowed Claim or the value of such collateral within sixty days (60) after the later of the Effective Date or the date that such collateral is valued pursuant to a Final Order of the Bankruptcy Court. The post-confirmation payments

to the Holders of Allowed Class 5 Claims will be made by the Reorganized Debtors. Class 5 is Unimpaired by the Plan. Accordingly, Holders of Class 5 Claims are not entitled to vote to accept or reject the Plan.

*Class 6: Unsecured Claims.* Class 6 consists of all Allowed Unsecured Claims. Holders of Allowed Unsecured Claims in Class 6 shall receive a Pro Rata Share of the Class 6 Distributions from the Trust established under Article 12 of the Plan. *"Class 6 Distributions"* means all of the following:

(a)     $750,000 to be paid to the Plan Administrator by the Debtors on the Effective Date out of the Cash on hand or the Minimum Equity Proceeds;

(b)     the proceeds from the Causes of Action less the costs, including attorneys' fees and expenses incurred by the Plan Administrator in pursuing the Causes of Action;

(c)     fifty percent (50%) of Excess Equity Auction Proceeds up to $500,000;

(d)     twenty-five percent (25%) of any Excess Equity Auction Proceeds in excess of $500,000; and

(e)     one hundred percent (100%) of any Excess Equity Auction Proceeds, if any, after the GE Claim has been satisfied in full, including all fees, costs and expenses to which GE is entitled pursuant to the GE Loan Documents and Section 506(b) of the Bankruptcy Code.

Class 6 is Impaired by the Plan. Each Holder of an Allowed Class 6 Unsecured Claim is entitled to vote to accept or reject the Plan. GE is not waiving its voting rights with respect to Class 6, however, it is waiving its right to any distribution on account of its Allowed Class 6 Unsecured Claim. The Creditors Committee estimates that scheduled and filed general unsecured claims against the Debtors total approximately $11 million. The Creditors Committee estimates that the plan treatment described above will result in a distribution to general unsecured creditors in the range of 5% to 10%.

*Class 7: Intercompany Claims.* Class 7 consists of all Intercompany Claims. All Intercompany Claims, with the exception of any Intercompany Claims of any of the Debtors against DBEB, LLC, are discharged under the Plan, and the Debtors will not make any distributions or establish any reserves under the Plan on account of the Intercompany Claims. All Claims of any of the Debtors against DBEB, LLC are hereby specifically preserved. Class 7 is Impaired by the Plan, however, the Holders of Class 7 Intercompany Claims are deemed to have rejected the Plan and, accordingly, are not entitled to vote to accept or reject the Plan. As reflected on DBEB's Schedule F, as of the Petition Date, DBEB owed E-Brands, the sum of $1,862,901.10. In addition, as set forth above, E-Brands holds one

hundred percent (100%) of the membership interests in the other Debtors, most of which continue to operate concept restaurants. The Debtors utilize a cash management and other systems in the ordinary course of business which allow them to operate on an integrated basis to achieve economies of scale and operate more efficiently. As a result, on any given day, there are outstanding accounts receivable and accounts payable reflected on the various operating Debtors' books and records. These receivables/payables fluctuate daily. Except in the case of DBEB, which is no longer operating, a snapshot of any given day's receivables/payables is not meaningful.

*Class 8: Membership Interests.* Class 8 consists of all Membership Interests in E-Brands Restaurants, LLC. As a result of the Equity Auction, all Class 8 Membership Interests shall be cancelled and no distributions shall be made under the Plan on account of the Class 8 Membership Interests. No Class 8 Membership Interest shall be entitled to receive or retain any property under the Plan on account of such Membership Interest. Class 8 is Impaired by the Plan and because no Holder of a Class 8 Membership Interest will receive or retain anything on account of the Plan, no Holder of a Membership Interest in Class 8 is entitled to vote on the Plan, and each such Holder of a Class 8 Membership Interest is deemed to have rejected the Plan.

*Class 9: Subsidiary Membership Interests.* Class 9 consists of all Subsidiary Membership Interests (which does not include the Membership Interests in DBEB). Class 9 Subsidiary Membership Interests shall not be affected by the Plan and E-Brands, as the Reorganized Debtor shall retain the Subsidiary Membership Interests following the Effective Date. Class 9 is Unimpaired by the Plan. Accordingly, Holders of Class 9 Subsidiary Membership Interests are not entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan.

*Class 10: Membership Interests in DBEB.* Class 10 consists of all Membership Interests in DBEB, LLC. The Debtor DBEB, LLC ceased its operations Prepetition and is no longer an operating entity. DBEB, LLC will not be an entity that will become a Reorganized Debtor so the Membership Interests in DBEB, LLC will be, at the option of the Plan Administrator, cancelled or retained by the Plan Administrator. Class 10 is deemed to have rejected the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

### ACCEPTANCE OR REJECTION OF PLAN

*Each Impaired Class Entitled to Vote Separately.* The Holders of Claims in each Impaired Class of Claims will be entitled to vote separately to accept or reject the Plan.

*Acceptance by Impaired Classes.* Classes 2, 3, 4, 6, 7, 8, and 10 are Impaired under the Plan, and (except for Classes 7, 8, and 10) Holders of Claims in Classes 2, 3, 4 and 6 are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than

any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half (½) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Membership Interests will have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in amount of the Allowed Membership Interests actually voting in such Class have voted to accept the Plan.

*Presumed Acceptance of Plan.* Classes 1, 5. 9 and 12 are Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, the Holders of Claims in Unimpaired Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Except as otherwise expressly provided in the Plan, nothing contained in the Plan or otherwise will affect the Debtors' or the Reorganized Debtors' rights and legal and equitable claims or defenses in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

*Deemed Non-Acceptance of Plan.* Holders of Class 7 Intercompany Claims, Class 8 Membership Interests, and Class 10 Membership Interests in DBEB will not receive or retain any Property or equity interest under the Plan on account of such Intercompany Claims and Membership Interests, respectively, and, therefore, Classes 7, 8 and 10 are deemed not to have accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Accordingly, votes of Holders of Class 7 Intercompany Claims, Class 8 Membership Interests, and Class 10 Membership Interests in DBEB are not being solicited by the Debtors.

*Impairment Controversies.* If a controversy arises as to whether any Claim or Membership Interest, or any Class of Claims or Class of Membership Interests, is Impaired under the Plan, such Claim, Membership Interest, or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Membership Interest, or a particular Class of Claims or Class of Membership Interests, under the Plan.

*Voting.* If a Claim is the subject of an objection prior to the deadline for submission of votes and the Holder of the Claim has not filed a motion seeking relief under Rule 3018, of the Bankruptcy Rules, the Holder shall not be entitled to vote to accept or reject the Plan.

TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*Assumption/Rejection of Executory Contracts and Unexpired Leases.* Exhibit "A" to the Plan identifies all executory contracts and unexpired leases to be Assumed Contracts under the Plan. The Debtors, with the consent of GE and the Creditors Committee, reserve the right to amend Exhibit "A" prior to the Confirmation Hearing with notice to the other

party to such executory contract or unexpired lease. Any executory contract, including but not limited to, personal service or employment agreements, or unexpired leases that has not been expressly rejected or assumed by the Debtors with the Bankruptcy Court's approval on or prior to the Confirmation Date will be deemed rejected by the Debtors as of the Effective Date unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease, or unless such executory contract or unexpired lease is listed in Exhibit "A." The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions and rejections described in this Article 7, pursuant to Section 365 of the Bankruptcy Code.

**Claims under Rejected Executory Contracts and Unexpired Leases.** Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtors or the Reorganized Debtors. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be thirty (30) days after the Confirmation Date. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith. All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 6.

**Cure of Defaults.** Any lessor or other party to an Assumed Contract (except those lessors or other parties whose unexpired leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 7.01, as contemplated by Section 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Cure Claim Submission Deadline asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an Assumed Contract failing to file a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from either objecting to assumption based upon an untimely Cure Claim, or from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtors or the Reorganized Debtors. The Reorganized Debtors shall have sixty (60) days from the Cure Claim Submission Deadline to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court. All Allowed Cure Claims shall be paid within ten (10) Business Days after such Cure Clam is Allowed.

## MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

*Overview.* The Plan and the distributions to creditors provided for herein will be funded from Cash on hand as of the Effective Date (not otherwise required to be paid to GE under the Plan), from income generated from the continued operation of the Debtors' businesses, from the GE Revolver (if applicable) and from the Minimum Equity Auction Proceeds. Subject to the results of the Equity Auction, and if the New Value Equity Participants are the successful bidders at the Equity Auction, their respective New Equity Interests under the Plan shall be split between Rashid Choufani, Scott Hoch, Ray Coudriet, David Wishinsky, Ronald Eugene Grubb Revocable Trust, Tony Arias, Charly Robinson, Steve Baker, Saba Shalhoub, and Flagstaff Investors, Ltd., other their assigns or designees, in the proportion of their specific contribution to the successful bid.

*Equity Auction.* Prior to the Confirmation Hearing, the Equity Auction will be held in accordance with the Bid Procedures and the Bid Procedures Order. Provided that GE has not withdrawn its consent to the Plan and treatment of the GE Comprised Secured Claim pursuant to Article 5 above, GE will not exercise its credit bid rights at the Equity Auction (if any); *provided, however, that* GE shall have the right, in its sole discretion, to determine the highest and best bid at the Equity Auction. In the event that E-Brands or any Creditor objects to GE's determination of the highest and best bid at the Equity Auction, such objecting party shall have the right to request that such objection be resolved by the Bankruptcy Court as part of the Confirmation Hearing. If an objecting party does not file a written request requesting that the Bankruptcy Court resolve any objection to GE's determination of the highest and best bid, with notice to the Debtors, the Creditors Committee and GE, such objecting party shall be deemed to have waived any objection to GE's determination. If an objection to GE's determination of the highest and best bid at the Equity Auction is filed, the Bankruptcy Court shall determine the successful bidder at the Equity Auction.

*Board of Directors and Executive Officers of the Reorganized Debtors.* Following the Effective Date, if the New Value Equity Participants are the successful bidders at the Equity Auction, the operation of the Reorganized Debtors will continue to be the responsibility of its management as directed by the board of directors of E-Brands as a Florida corporation converted from an LLC. The individuals who are proposed to serve, after confirmation of the Plan, as Chief Executive Officer, and Chief Operating Officer of Reorganized Debtors, if the New Equity Participants are the successful bidders at the Equity Auction are as follows:

| *Name* | *Title* |
|---|---|
| Rashid Choufani | Chief Executive Officer |
| Charles E. Robinson | Chief Operating Officer |

If the New Equity Participants are not the successful bidders at the Equity Auction, the successful bidder will give notice prior to entry of the Confirmation Order of the names of

the members of the board of directors of the Reorganized Debtors (including E-Brands), the manager and the officers of each Reorganized Debtor (to the extent applicable to a particular debtor) together with information regarding each such board member's, manager's and officer's background and experience. From and after the Confirmation Date, the board of directors and members of the Debtors and the Reorganized Debtors will have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

***Vesting of Property of the Estates in the Reorganized Debtors.*** On the Effective Date, except as otherwise expressly provided in the Plan, all Property of the Estates (excluding the Causes of Action) shall vest in the Reorganized Debtors free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature except the Permitted Liens, and the Confirmation Order shall so provide. Pursuant to the Plan, unless the GE Compromised Secured Claim is paid to GE by the GE Cash Payment, all Property of the Estates (excluding the Causes of Action) shall vest in the Reorganized Debtors subject to the GE Liens and security interests. The Reorganized Debtors intend to preserve net operating losses to the maximum extent permitted under applicable law. As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of their Properties, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. All privileges with respect to the Property of the Debtors' Estates, including the attorney/client privilege, to which the Debtors are entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtors.

***Continued Corporate Existence.*** Each of the Debtors will continue to exist after the Effective Date as a separate entity, with all of the powers of a limited liability company, under the laws of the jurisdiction of its organization and pursuant to its articles of organization and operating agreement or other organizational documents in effect prior to the Effective Date, except to the extent such articles and operating agreement or other organizational documents are amended or amended and restated as provided in the Plan or the Confirmation Order, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

***Company Action.*** All matters provided for under the Plan involving the structure of the Debtors or the Reorganized Debtors, or any company action to be taken by or required of the Debtors or the Reorganized Debtors will be deemed to have occurred and be effective as provided in the Plan, and will be authorized and approved in all respects without any requirement for further action by the members or directors of the Debtors or the Reorganized Debtors.

***Pursuit of Causes of Action.***

(a)     On the Effective Date, the Causes of Action (as defined in Section 1.23 of the Plan) shall be deemed transferred to the Plan Administrator without further action by any party, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. The Plan Administrator will have the right, in its sole and absolute discretion, to pursue, not pursue, settle, release or enforce any Cause of Action without seeking any approval from the Bankruptcy Court. The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtors state that any party in interest that engaged in business or other transactions with the Debtors Prepetition or that received payments from the Debtors Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. The proceeds of the Causes of Action and Trust Assets will fund the expenses of the Plan Administrator to pursue the Causes of Action, including fees and costs of counsel for the Plan Administrator.

(b)     No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE PLAN ADMINISTRATOR. Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a Final Order of the Bankruptcy Court authorizes the Debtors to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or the Plan Administrator do not possess or do not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the express intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of the Plan Administrator. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Plan Administrator, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of

Action.

(c)     The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Plan Administrator will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action.  Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court.  Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any *res judicata* or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

(d)     Notwithstanding the foregoing, to the extent the Debtors or the Plan Administrator assert or may assert any Cause of Action against GE, in consideration of the agreements and compromises of GE under the Plan with respect to the GE Claim, any such Causes of Action against GE are hereby released and the Confirmation Order shall specifically provide for such a release.

(e)     Prior to the Petition Date, E-Brands entered into a Management Agreement with La Dolbe and La Dolbe executed a Note in favor of E-Brands in the amount of $1,507,945.78.  The Management Agreement and the Note are assets of E-Brands' bankruptcy estate.  The payments from La Dolbe to E-Brands under the Management Agreement and the Note are approximately $30,000 per month, or $360,000 per year for approximately nine (9) years.  GE has bargained for a security interest in the Management Agreement and the Note.  In the event that the Successful Bidder at the Equity Auction provides GE with the Cash Payment on the Effective Date, GE's security interest in the Note will terminate.  If that occurs, the Creditors Committee asserts that it can pursue any Person in connection with the La Dolbe Cause of Action (as defined in Section 1.97 of the Plan) should the New Value Equity Participants become the successful bidder of the Equity Auction.

***Prosecution and Settlement of Claims and Causes of Action.***  Prior to the Effective Date, the Debtors, and after the Effective Date, the Plan Administrator, (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Cause of Action which the Debtors had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action.  From and after the Effective Date, the Plan Administrator shall be authorized to compromise and settle any Cause of Action or objection to a Claim in accordance with Bankruptcy Rule 9019, after notice to the Notice Parties.

***Effectuating Documents; Further Transactions.*** Prior to the Effective Date, each of the managing member, chief executive officer, chief operating officer, and chief financial officer of the Debtors (and, on and after the Effective Date, each of the managing member, chief executive officer, chief operating officer, and chief financial officer of the Reorganized Debtors) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

***Cancellation of Existing Loan Documents and Agreements.*** Except with respect to GE and the GE Claim, on the Effective Date and without any further action by any party, and except as otherwise expressly provided in the Plan, (a) all Prepetition notes, bonds, indentures, debentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors with respect to Claims in Classes 1 through 3 and 5 through 9 shall be deemed cancelled, except with respect to the GE Secured Claim, and (b) the obligations of the Debtors under any such Prepetition notes, bonds, indentures, debentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors with respect to Claims in Classes 1 through 3 and 5 through 9 shall be discharged (except as otherwise provided in the Plan with respect to the GE Claim and the GE Loan Documents).

***GE Amended Loan Documents.*** No more the fifteen (15) days prior to the Confirmation Hearing, the GE Amended Loan Documents, including the GE Amended and Restated Note, the GE Revolver Note and the GE B Note, will be filed with the Bankruptcy Court and must be satisfactory to GE in its sole discretion. The GE Loan Documents may be amended, restated and/or consolidated, in the sole discretion of GE and will include, but not be limited to, the following:

       (a)    normal financial, affirmative, and negative covenants including limits on permitted investments (e.g. new stores);

       (b)    no dividends or distributions to equity for the term of the GE Secured Claim (exception for taxes of members to the extent E-Brands remain a limited liability company), plus additional restrictive covenants regarding affiliated transactions, diversion of cash flow, expansion and other similar acts;

       (c)    salary for current owner of majority interests in E-Brands and/or its chief executive officer to be tied to performance of the entities and compliance with loan documents with specific limitations and restrictions to be contained in the GE Amended Loan Documents;

       (d)    GE shall have the right in its sole discretion to sell participation interests in the GE Claim or to syndicate all or part of the GE Claim; and

(e)  general and administrative expenses for the Reorganized Debtors to be limited to no more than six (6%) percent of annual gross revenues.

The foregoing is not an exhaustive description of the modifications to the GE Loan Documents which will or might be made to carry out the agreements between GE and the Debtors with respect to the GE Amended Loan Documents. All such amendments and modifications will be contained in the GE Amended Loan Documents that will be filed prior to the Confirmation Hearing in accordance with the Plan.

**Exclusivity Period.** The Debtors will retain the right to amend or modify the Plan so long as such amendments or modifications are acceptable to GE and the Creditors Committee, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date. If the Debtors submit an amendment or modification to the Plan that has not been approved by GE and the Creditors Committee, GE and/or the Creditors Committee shall have the right to withdraw their consent to or support of the treatment of the GE Claim or the Class 6 Claims under the Plan and pursue all of their rights and remedies, including changing any vote by GE to accept the Plan to a vote rejecting the Plan, or, in the case of the Creditors Committee, requesting that the Holders of Class 6 Claims change their votes from acceptances to rejections of the Plan. If the Debtors submit an amendment or modification to the Plan that has not been approved by the Creditors Committee, the Creditors Committee shall have the right to withdraw its support for the Plan. Notwithstanding the foregoing, the Plan will be deemed to have been substantially consummated by the execution of the GE Amended Loan Documents on the Effective Date, and shall not be subject to any modification thereafter unless the GE and the Creditors Committee otherwise expressly agree in writing. GE shall have no obligations under the Plan unless and until there is such substantial consummation of the Plan by GE of any payments due it on the Effective Date and/or execution and delivery of the GE Amended Loan Documents on the Effective Date.

**Dissolution of the Creditors Committee.** The Creditors Committee shall continue in existence until the Effective Date. Thereafter, the Creditors Committee and its counsel and other Professionals retained by the Creditors Committee shall be deemed dissolved and the members of the Creditors Committee shall be deemed discharged from all rights, duties and liabilities arising from, or related to, the Reorganization Cases.

On January 31, 2011, the Debtors filed a First Amendment to the Plan. It is contained in a new Section 8.14 and provides as follows:

**Successful Bidder's Optional Action on Plan of Conversion.** At the express and sole option and election of the successful bidder at the Equity Auction, the Plan may, upon such election, operate as a plan of conversion of a Florida domestic limited liability company, E-Brands Restaurants, LLC, to a Florida corporation. In the event that the successful bidder elects to convert E-

Brands to a corporation, following the Equity Auction, E-Brands shall file a certificate of conversion from a Florida Limited Liability Company to a Florida Corporation with the Florida Department of State consistent with Fla. Stat. Section 608.4403. The election of the successful bidder at the Equity Auction shall be made in writing with notice to the Notice Parties. In the event that the New Value Equity Participants are the successful bidders at the Equity Auction, satisfy all conditions precedent to the Effective Date, including, but not limited to, execution of the GE Amended Loan Documents, the New Value Equity Participants shall effectuate such conversion of E-Brands from a limited liability company to corporate form. Because the Prepetition Membership Interests in E-Brands are extinguished as a result of the Equity Auction and confirmation of the Plan, no further notifications or statements concerning appraisal rights [other than service of the Plan as required under the Bankruptcy Code] to members of E-Brands shall be necessary or required to effectuate the potential conversion under Florida law (including Fla. Stat. Sections 608.4402, 608.4351-608.43595). Because of the discharge provided pursuant to the Plan, the Confirmation Order, Section 1141 of the Bankruptcy Code, and other applicable Federal bankruptcy law, Fla. Stat. Section 608.4404(3) through (6) shall not apply to E-Brands.

THE ELECTION TO CONVERT TO CORPORATE FORM PROVIDED IN THIS AMENDMENT IS ENTIRELY OPTIONAL AND IS DESIGNED TO PROVIDE FLEXIBILITY TO THE SUCCESSFUL BIDDER AT THE EQUITY AUCTION. PER THE FIRST AMENDMENT, THE SUCCESSFUL BIDDER AT THE EQUITY AUCTION MAY, AT ITS OPTION, CHOOSE TO ELECT TO CONVERT E-BRANDS FROM A LIMITED LIABILITY COMPANY TO A FLORIDA CORPORATION OR NOT, AT ITS DISCRETION. THE DEBTORS HAVE BEEN INFORMED THAT, IN THE EVENT THAT THE NEW VALUE EQUITY PARTICIPANTS (AS SUCH TERM IS DEFINED IN THE PLAN) ARE THE SUCCESSFUL BIDDER, THEY WILL CHOOSE SUCH ELECTION, AND THAT THE ABILITY TO MAKE THE ELECTION IF THEY ARE THE SUCCESSFUL BIDDER IS A CRITICAL AND NECESSARY CONDITION OF THEIR PARTICIPATION IN THE PLAN.

THE FIRST AMENDMENT IS NOT PRESENTLY SUPPORTED BY GENERAL ELECTRIC CAPITAL CORP. AND GENERAL ELECTRIC CAPITAL BUSINESS ASSET FUNDING CORP. OF CONNECTICUT ("GE"). GE HAS INFORMED THE DEBTORS THAT THEY REQUIRE MORE TIME TO CONSIDER THE IMPACT OF THE AMENDMENT ON GE AND REORGANIZED E-BRANDS BECAUSE OF THE POTENTIAL TAX CONSEQUENCES TO E-BRANDS AS A RESULT OF SUCH CONVERSION. ACCORDINGLY, GE RESERVES THE RIGHT TO OBJECT TO THE FIRST AMENDMENT. IN THE EVENT THAT GE OBJECTS TO THE FIRST AMENDMENT, THE COURT WILL CONSIDER THE OBJECTION TO THE FIRST

AMENDMENT AT THE CONFIRMATION HEARING. IN THE EVENT THAT GE OBJECTS TO THE FIRST AMENDMENT, THE DEBTORS RESERVE THE RIGHT TO OPPOSE THE OBJECTION AND TO ALLOW THE BANKRUPTCY COURT TO RESOLVE THE ISSUE AT CONFIRMATION. IN THE EVENT THAT GE AND THE DEBTORS AGREE TO THE FIRST AMENDMENT AT A LATER DATE, THE PARTIES WILL FILE AN APPROPRIATE STIPULATION.

## PROVISIONS GOVERNING DISTRIBUTION

### *Determination of Claims.*

(a)     From and after the Effective Date, the Plan Administrator shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims except the GE Claim which shall be Allowed as part of GE's consent to its treatment under the Plan. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtors or the Reorganized Debtors), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve the Notice Parties with any request to the Bankruptcy Court for allowance to file late Unsecured Claims. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 6 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Reorganized Debtors receive actual notice of the filing of such Claim.

(b)     Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Plan Administrator, as the case may be, effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Cases on behalf of the Holder of a Claim.

(c)     Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Reorganization Cases, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. Prior to the Effective Date, the Debtors may, at any time, request that the Bankruptcy Court estimate any

contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

### *Distributions.*

(a)     Each Holder of an Allowed Unsecured Claim in Class 6 shall receive a Cash Distribution, on the applicable Distribution Date, in the amount provided for in Article 5 of the Plan.

(b)     Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 6 unless and until such Disputed Claim becomes an Allowed Class 6 Claim. At such time that such Disputed Claim becomes an Allowed Class 6 Claim, the Holder of such Allowed  Class 6 Claim shall receive the Distribution to which such Holder is then entitled under the Plan.

(c)     Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 6 Claim is subject to a demand or proceeding against it by the Reorganized Debtors or the Plan Administrator under Section 502(d) of the Bankruptcy Code, then the Reorganized Debtors or the Plan Administrator (in their sole discretion, as the context may require) may withhold a Distribution to such Holder until the final resolution of such proceeding.

(d)     Distributions to Holders of Allowed Claims in Class 6 shall be sent to the address of such Holder set forth in the Schedules or in the books and records of the Debtors or the Reorganized Debtors at the time of the Distribution, unless the Reorganized Debtors have been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules. Neither the

Reorganized Debtors nor the Plan Administrator shall be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

### *Unclaimed Distributions.*

(a)    If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then the Plan Administrator shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

(b)    If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Plan Administrator due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Reorganized Debtors as to such check within sixty (60) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

(c)    Any unclaimed Distribution as described above sent by the Plan Administrator shall become part of the Trust Assets and distributed to the Holders of Allowed Class 6 Claims in accordance with the Plan unless the amount of such unclaimed Distribution is De Minimis, in which event such unclaimed Distribution shall become the property of the Reorganized Debtors.

### *Transfer of Claim.*  In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Reorganized Debtors and Plan Administrator in writing of such transfer and provide sufficient written evidence of such transfer. The Reorganized Debtors and Plan Administrator shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtors and Plan Administrator shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtors and Plan Administrator shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

***One Distribution Per Holder.*** If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distribution hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

***Effect of Pre-Confirmation Distributions.*** Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtors or the Reorganized Debtors or the Plan Administrator to such Holder under the Plan.

***No Interest on Claims.*** Except as expressly stated in the Plan and except with respect to the GE Claim, or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition Interest or the payment of Postpetition Interest, penalties, or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Disputed Claim becomes an Allowed Claim.

***Compliance with Tax Requirements.*** In connection with the Plan, the Reorganized Debtors and Plan Administrator shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution

## DISCHARGE, RELEASE, LIMITATION OF LIABILITY, AND GENERAL INJUNCTION

***Discharge of Claims.*** Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order will operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all Debts of, and Claims of any nature whatsoever against the Debtors that arose at any time prior to the Confirmation Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtors and the Reorganized Debtors, and their respective successors or assigns, will be discharged from any Claim or Debt that arose prior to the Confirmation Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of

whether (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtors, the Reorganized Debtors, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities, or anything based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order will contain appropriate injunctive language to that effect. In accordance with the foregoing, except as specifically provided in the Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other Debts and Liabilities against the Debtors, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors, at any time, to the extent that such judgment relates to a discharged Claim, Liability or Debt. Moreover, because of the discharge granted as a result of the Plan and the Bankruptcy Code, the effects of conversion set out in Fla. Stat. Section 608.4404(3) through (6), if elected by the Holders of the New Equity Interests and approved by the Bankruptcy Court or consented to by GE shall not apply to E-Brands. Notwithstanding the foregoing, if under the Plan the Reorganized Debtors are obligated to make payments to Holders of Allowed Claims, the Reorganized Debtors will remain obligated to make such payments. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition PACA Claims, Federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, or any of their respective Properties.

***General Injunction.*** Pursuant to sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, or Liability that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtors or the Reorganized Debtors or their respective Properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors or the Reorganized Debtors or their respective Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtors or the Reorganized Debtors or their respective

Properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or the Reorganized Debtors; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtors or the Reorganized Debtors under the Plan and the Plan Documents and the other documents executed in connection therewith. The Debtors and the Reorganized Debtors shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.02 shall not release, or be deemed a release of, any of the Causes of Action.

*Exculpation from Liability. The Debtors, the Reorganized Debtors, and their respective directors and members, the Professionals for the Debtors (acting in such capacity), the Creditors Committee, and its members, and the Professionals for the Creditors Committee (acting in such capacity), GE and its respective officers, directors and employees, the Professionals for GE (acting in such capacity) and the New Value Equity Participants (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Cases, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party nor shall this exculpation from liability apply to any prepetition acts of any of the New Value Equity Participants. The rights granted under this Article 11.03 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.03 shall not release, or be deemed a release of, any of the Causes of Action.*

*Release. On the Effective Date, the Released Parties shall be unconditionally and are hereby deemed to be unconditionally released from any and all claims, obligations, suits, judgments, damages, losses, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any*

*act or omission, transaction, event or other occurrence taking place between the Petition Date and the Effective Date, which is in any way relating to the Debtors, the Reorganization Cases, any Property of the Debtors, the business or operations of the Debtors, any Plan Documents, the Plan, or any of the transactions contemplated thereby; provided, however, that this release provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party nor shall this release apply to any prepetition acts of any of the officers, directors, members or managers of any of the Debtors . The Confirmation Order shall enjoin the prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any such claim, obligation, suit, judgment, damage, loss, right, remedy, cause of action, charge, cost, debt, indebtedness, or liability which arose or accrued during such period or was or could have been asserted against any of the Released Parties, except as otherwise provided in the Plan or in the Confirmation Order. Each of the Released Parties shall have the right to independently seek enforcement of this release provision. This release provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article 11.04 shall not release, or be deemed a release of, any of the Causes of Action.*

*Barton Doctrine.* The "Barton Doctrine", *e.g. Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881) (Supreme Court held that a trustee cannot be sued without leave of the bankruptcy court), which prohibits a party from suing either a trustee, the officers of a debtor in possession, or their attorneys, in a non-appointing court for acts done in their official capacity, and shall stand as one of the bases for enforcement of the provisions herein. *See, e.g., In the Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240-41 (6th Cir. 1993) ("[i]t is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a nonappointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court .... counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee"); *Mangun v. Bartlett (In re Balboa Improvements, Ltd.)*, 99 B.R. 966, 970 (9th Cir. BAP 1989) (holding that permission to sue debtor's attorney for alleged misconduct in the administration of an estate must be obtained from the bankruptcy court); *Matter of Krikava*, 217 B.R. 275, 279 (Bankr.D.Neb. 1998) ("[c]onsent of the appointing bankruptcy court is required even when the plaintiff seeks to sue in another federal court").

*Term of Certain Injunctions and Automatic Stay.*

(a)     All injunctions or automatic stays for the benefit of the Debtors pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise provided for in the Reorganization Cases, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Effective Date, unless otherwise ordered by the Bankruptcy Court.

(b)     With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtors' liability on Prepetition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Debtors affirmatively elect to have the Debtors' liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtors affirmatively elect to have the automatic stay lifted and to have the Debtors' liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtors as provided herein.

*No Liability for Tax Claims.* Unless a taxing Governmental Unit has asserted a Claim against the Debtors before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtors, the Reorganized Debtors or their respective directors, officers, employees or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, any of their Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.   The entry of the Confirmation Order shall be deemed to be a determination that no provision of the Plan has avoidance of taxes as a principal purpose, and the Confirmation Order shall so provide.

*Regulatory or Enforcement Actions.* Nothing in this Plan shall restrict any federal government regulatory agency from pursuing any regulatory or police enforcement action or performing its statutory duties against any Person or Entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code. Nothing contained in this Article 11.07 is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

*No Liability for Untimely Administrative Expense Claims.* Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition PACA Claims, Federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, or any of their respective Properties.

*Provisions Applicable to Default of Obligations to GE Under the Plan.* If the Reorganized Debtors otherwise default in payment and or performance of their obligations to GE under the Plan, including, but not limited to their obligations under the GE Loan

Documents, the GE Amended and Restated Note, the GE Revolver Note, the GE B Note or the GE Amended Loan Documents, and such default has not been timely cured as provided in the GE Loan Documents, the GE Amended and Restated Note, the GE Revolver Note, the GE B Note or the GE Amended Loan Documents, GE shall have the right to enforce all of its rights and remedies, whether at law or in equity, including, but not limited to, all rights and remedies provided to GE under the Plan, including but not limited to the rights and remedies provided to GE under the GE Loan Documents, the GE Amended and Restated Note, the GE Revolver Note, the GE B Note, the GE Amended Loan Documents or the GE Guaranty (if applicable), and/or to move for sale of any or all of the GE Post Effective-Date Collateral in proceedings before the Bankruptcy Court. The right of GE to move for sale proceedings before the Bankruptcy Court and to have the Bankruptcy Court conduct any such sale (including, but not limited to, with full reservation of GE's credit bidding rights) will be reserved specifically in the Confirmation Order. With respect to any appointment of the Liquidating Trustee as provided in this Section 11.10, and the possible sale of the GE Post Effective-Date Collateral in the Reorganization Cases, the Bankruptcy Court will have and retain jurisdiction to appoint the Liquidating Trustee in accordance with the Default Notice, to authorize the Liquidating Trustee to sell the GE Post Effective Date Collateral, to operate the business of the Reorganized Debtors after such appointment, and/or to conduct sales of the GE Post Effective Date Collateral after default by the Reorganized Debtors and at the option of GE. If the Reorganized Debtors default in any of their obligations under the Plan to GE, including but not limited to any of their obligations the obligations under the GE Loan Documents, the GE Amended and Restated Note, the GE Revolver Note, the GE B Note, the GE Amended Loan Documents, GE shall have the right to file the Default Notice and have the Bankruptcy Court enter the order appointing the Liquidating Trustee. Upon his/her/its appointment, the Liquidating Trustee shall take possession and control of the GE Post Effective Date Collateral. The Reorganized Debtors may request entry of the Final Decree prior to payment in full of the Allowed GE Compromised Secured Claim as provided under the Plan, including but not limited to as provided under the GE Loan Documents, the GE Amended and Restated Note, the GE Revolver Note, the GE B Note and the GE Amended Loan Documents, *provided, however, that* the Reorganized Debtors shall not seek an order closing the Reorganization Cases so long as there remain any payment or performance obligations of any of the Reorganized Debtors to GE under the Plan, including but not limited to any payment or performance obligations of any the Reorganized Debtors under the GE Loan Documents, the GE Amended and Restated Note, the GE Revolver Note, the GE B Note and the GE Amended Loan Document. Notwithstanding the foregoing and in GE's sole discretion, upon default by any of the Reorganized Debtors in their obligations to GE under the Plan, including but not limited to any payment or performance obligations under the GE Loan Documents, the GE Amended and Restated Note, the GE Revolver Note, the GE B Note and the GE Amended Loan Documents, which default has not been cured in accordance with the terms of the GE Loan Documents, the GE Amended and Restated Note, the GE Revolver Note, the GE B Note or the GE Amended Loan Documents, in lieu of filing the Default Notice and requesting appointment of the Liquidating Trustee, GE may require the Reorganized Debtors to hire a chief restructuring officer satisfactory to GE with such powers

and duties as may be determined by GE and approved by the Bankruptcy Court.

## PLAN ADMINISTRATOR

*Appointment of Plan Administrator.* The Plan Administrator shall be designated by the Creditors Committee, subject to any objection by the Debtors, and approved by the Bankruptcy Court. The Plan Administrator shall be independent of the Debtors. The Creditors Committee shall file a notice with the Bankruptcy Court on a date that is not less than ten (10) days prior to the Confirmation Hearing designating the Person who they have selected as Plan Administrator and seeking approval of such designation. The Person designated as Plan Administrator shall file an affidavit demonstrating that such Person is disinterested as defined in Section 101(14) of the Bankruptcy Code; provided, however, if such Person is a Professional, any Allowed Administrative Expense Claim shall not render such Person non-disinterested. The Debtors shall have five (5) days after the notice filed by the Creditors Committee to file an objection to the selection of the Plan Administrator by the Creditors Committee. If any such objection is not resolved prior to the Confirmation Hearing, the Bankruptcy Court shall determine whether the Creditors Committee's selection should be approved. If approved by the Bankruptcy Court, the Person so designated shall become the Plan Administrator on the Effective Date. The Plan Administrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Trust Agreement and in the Plan and Section 1123(b)(3) of the Bankruptcy Code.

*Establishment of Trust.* On the Effective Date, the Trust and the Trust Agreement shall be deemed effective without any further action by any party. The Trust Agreement shall establish the Trust which shall be a distinct legal entity from the Debtors. The Debtors will file a copy of the Trust Agreement with the Court prior to the Confirmation Hearing. The Trust is intended to qualify as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B. By virtue of the Plan and the Confirmation Order, as of the Effective Date, the Debtors shall be deemed to transfer, assign and deliver all of the Estates' right, title, and interest in and to the Trust Assets (including the Causes of Action) to the Trust. The Trust Assets shall not include the La Dolbe Transaction, unless otherwise agreed to by the Debtors and the Creditors Committee or by order of the Bankruptcy Court and provided that GE has been paid the GE Cash Payment on the Effective Date. Upon the request of the Plan Administrator, the Debtors shall execute and deliver such other documentation deemed reasonably necessary by the Plan Administrator or its counsel to assure the proper transfer, assignment and delivery of title to the Trust Assets (including the Causes of Action) to the Trust. The Confirmation Order shall also contain appropriate language transferring, assigning, and delivering title to the Trust Assets (including the Causes of Action) to the Trust and shall further provide that such transfer, assignment and delivery shall be effective without further action by any party.

*Irrevocable Trust.* Any and all funds or assets in the Trust (including the Trust Assets) shall be held in an irrevocable trust for distribution to Holders of Allowed Claims.

Such distributions shall be made in accordance with the procedures set forth in Article 9 of the Plan and the terms of the Trust Agreement, and the Confirmation Order shall contain appropriate language to that effect. Once funds or assets are deposited into the Trust, they shall no longer be Property of the Debtors or any other Person or Entity and neither the Consolidated Debtors nor any other Person or Entity shall have any claim to said funds or assets. The Confirmation Order shall declare and provide that all funds or assets in the Trust (including the Trust Assets) shall (a) be held in trust as set forth above, (b) not be Property of the Estates in this or any subsequent proceeding in which the Debtors or their successors or assigns may be a debtor under the Bankruptcy Code, and (c) be protected from, and not be subject to, the Claims of any Creditors of, or Holders of Equity Interests in, the Debtors.

***Channeling Injunction.*** On the Effective Date, all Class 6 Claims shall be automatically deemed channeled, transferred, and attached solely and exclusively to the Trust, and the sole and exclusive right and remedy available to Creditors holding Allowed Class 6 Claims shall be the entitlement, in accordance with the Plan and the Trust Agreement, to assert Claims solely and exclusively against the Trust. The transfer to, vesting in and assumption by the Trust of the Trust Assets, as contemplated in the Plan and the Trust Agreement, shall, as of the Effective Date, discharge, release and extinguish all obligations and Liabilities of the Debtors for and in respect of all Class 6 Claims. The Trust shall assume sole responsibility and liability for all Class 6 Claims and such Claims shall be paid from the Trust Assets as described in this Article 12.

***Cash Distributions from the Trust.*** Pursuant to the Trust Agreement, each Holder of an Allowed Class 6 Claim shall be deemed to receive, in exchange for such Holder's Allowed Claim, units of beneficial interest in the Trust which will thereafter represent the distribution such Holder is entitled to receive under the Plan. The units of beneficial interest in the Trust shall not be certificated and are not transferable.

Each Holder of an Allowed Class 6 Claim shall receive, on the Distribution Date, a Cash distribution out of the Trust Assets as set forth in the Plan; provided, however, that if such Holder's Claim has been bifurcated into an Allowed Claim and a Disputed Claim because the amount of the Claim specified on such Holder's Proof of Claim exceeds the amount of the corresponding Claim scheduled in the Schedules, then such Holder's Disputed Claim shall be deemed an Allowed Claim for distribution purposes on such Distribution Date, unless the Trustee files an objection to such Disputed Claim prior to the Distribution Date; and provided, further, however, if, on the Distribution Date, any Disputed Claims remain, then the Trustee shall withhold from any such distribution the amount of funds that would be necessary to make the same proportionate distribution to the Holders of Claims which are Disputed Claims as if each such Disputed Claim were an Allowed Claim. At such time that the Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim shall receive the distribution to which such Holder is then entitled under the Plan.

***Duties of Plan Administrator.*** The Plan Administrator shall have the following

duties under the Trust Agreement:

        (a)     resolve any pending objections to Class 6 Claims, and file or otherwise assert any objections or adversary proceedings necessary or appropriate to resolve all Disputed Claims;

        (b)     make any required distribution from the Trust to the Holders of Allowed Unsecured Claims in Class 6, in accordance with the terms and provisions of the Plan and the Trust Agreement;

        (c)     pursue, investigate, prosecute, compromise and otherwise resolve the Causes of Action;

        (d)     resolve and pay all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930 from the period from the Effective Date through the Final Decree Date; and

        (e)     Such other duties as may be set forth in the Trust Agreement or elsewhere in the Plan.

The Trust Agreement shall also provide for the Plan Administrator to perform duties commonly performed by, and have the powers commonly provided to, such administrators, as more specifically set forth in the Trust Agreement, including, among other things, obtaining tax identification number(s) for the Trust, preparing and filing appropriate federal and state tax returns for the Trust, opening bank accounts for the Trust, maintaining records pertaining to the units of beneficial interest of the Holders of all Allowed Class 6 Claims in the Trust, and retaining professionals to represent the interests of the Trust. For purposes of performing all of the foregoing, as well as for purposes of prosecuting to conclusion objections to Claims and Trust Actions only, the Plan Administrator shall have hereunder the status of a representative of the Estates under 11 U.S.C. § 1123(b)(3)(B). Until the Cases are closed, the Plan Administrator shall submit any proposed actions or compromises to the Bankruptcy Court as required by the terms of the Trust Agreement, upon notice to the Entities entitled to Notice and such other parties as the Bankruptcy Court may direct (including any Holders of Allowed Claims who provide the Trustee with written notice of their request to receive notice of such activities). The United States Trustee shall not be required to supervise the Plan Administrator, but shall have standing to seek removal of the Plan Administrator.

        The Plan Administrator is authorized to retain such professionals of his/her choosing (including legal counsel) as may be necessary to perform his/her duties under the Plan.

        ***Expenses of the Trust.*** All costs and expenses associated with the administration of the Trust (including the Trust Expenses) shall be the sole responsibility of and paid by the

Trust.

*Investment of Funds.* The Plan Administrator shall invest the funds in the Trust; provided, however, that the investment shall only be in United States government securities with a maturity date of ninety (90) days or less, money market funds or other similar short-term liquid investments. Any and all interest earned on the funds in the Trust shall be added to the principal amount of the funds in the Trust and shall be available, together with the principal amount, for distributions in accordance with the provisions of this Article 12.

*Federal Income Tax Treatment.* For federal income tax purposes, it is intended that the Trust be classified as a liquidating trust under Section 301.7701-4 of the Procedure and Administration Regulations and that such trust is owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries (i.e., Holders of Allowed Claims) be treated as if they had received a distribution of an undivided interest in the Trust Assets and then contributed such interests to the Trust.

*Termination of Trust.* The Trust shall terminate as provided in the Trust Agreement.

## MISCELLANEOUS PROVISIONS

*Retention of Jurisdiction.* The Plan provides for the retention of jurisdiction by the Bankruptcy Court following the Effective Date to, among other things, determine all disputes relating to Claims, Membership Interests, and other issues presented by or arising under the Plan. The Bankruptcy Court will also retain jurisdiction under the Plan for any actions brought in connection with the implementation and consummation of the Plan and the transactions contemplated thereby. See Article 13 of the Plan for a more detailed description.

*No Admissions.* The Plan provides for the resolution, settlement and compromise of Claims against and Membership Interests in the Debtors. Nothing herein will be construed to be an admission of any fact or otherwise binding upon the Debtors or GE in any manner prior to the Effective Date.

*Revocation or Withdrawal of the Plan.* The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan will be deemed null and void in all respects, and nothing contained in the Plan will be deemed (a) to constitute a waiver or release of any Claims by or against, or Membership Interests in, the Debtors or any other Person, (b) to constitute a waiver or release of any Claims by GE or the Creditors Committee, or (c) to prejudice in any manner the rights of the Debtors or any other Person, including GE, in any further proceedings involving the Debtors.

*Settlement of Claims and Causes of Action.* Except as otherwise provided in the Plan, the Debtors or the Plan Administrator, as the case may be, may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any

claim or Cause of Action which the Debtors in Possession had or had power to assert immediately prior to the Effective Date and may settle or adjust such claim or Cause of Action in accordance with the terms of the Plan.

*Standard for Approval by Bankruptcy Court.* If any of the matters described in this Plan is brought for approval before the Bankruptcy Court, any such approval will mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

*Further Assurances.* The Debtors or the Reorganized Debtors agree and are authorized to execute and deliver any and all papers, documents, contracts, agreements, and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

*Headings.* The headings and table of contents used in the Plan are for convenience and reference only and will not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

*Notices.* All notices, requests, or other documents in connection with or required to be served by the Plan will be in writing and will be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

(a)     If to the Debtors or the Reorganized Debtors:
        **E-BRANDS RESTAURANTS, LLC, ET. AL**
        Attention: Charles E. Robinson, Chief Operating Officer
        7680 Universal Blvd., Suite 195
        Orlando, Florida 32819

        with a mandatory copy to:
        Richard C. Prosser, Esquire
        Stephen R. Leslie, Esquire
        **STICHTER, RIEDEL, BLAIN & PROSSER, P.A.**
        110 East Madison Street, Suite 200
        Tampa, Florida 33602

(b)     If to the Creditors Committee:
        Frank P. Terzo, Esquire
        GrayRobinson, P.A.
        1221 Brickell Ave., Suite 1600
        Miami, FL 33131

    (c)     If to GE:

               GE Capital Franchise Finance
               6464 185th Avenue, NE
               Suite 100
               Redmond, WA 98052
               Attention: Tom Raabe

             with mandatory copies to:
               Susan G. Boswell, Esquire
               Quarles & Brady LLP
               One South Church Avenue, Suite 1700
               Tucson, AZ 85701
             and to:
               Philip V. Martino, Esquire
               Quarles & Brady LLP
               101 East Kennedy Blvd., Suite 3400
               Tampa, FL 33602

*Contemporaneous Service.* Copies of all notices under this Plan to any party will be given to the Debtors, the Reorganized Debtors, and the Creditors Committee contemporaneously with the giving of notice to such party.

*Changes of Address.* Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth above.

*Governing Law.* Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan will be governed by, construed, and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

*Limitation of Allowance.* No attorney's fees, punitive damages, penalties, special damages, lost profits, treble damages, exemplary damages, or interest will be paid with respect to any Claim or Membership Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

*Estimated Claims.* To the extent that any Claim is estimated for any purpose other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

*Consent to Jurisdiction.* Upon any default under the Plan, the Debtors and the

Reorganized Debtors consent to the jurisdiction of the Bankruptcy Court or any successor to the Bankruptcy Court and agree that it will be the preferred forum for all proceedings relating to any such default. Except as otherwise provided in the Plan, the GE Loan Documents or the GE Amended Loan Documents, by accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Cure Claim, by voting on the Plan, or by entering an appearance in the Reorganization Cases, all Creditors and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and will be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Reorganization Cases, including the matters and purposes set forth in Article 13 of the Plan. The Bankruptcy Court will maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 13 of the Plan.

**Setoffs.** Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtors may, but will not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such Holder.

**Successors and Assigns.** The rights, benefits, duties, and obligations of any Person named or referred to in the Plan will be binding upon and will inure to the benefit of any heir, executor, administrator, successor, or assign of such Person.

**No Interest.** Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim will be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Claim for any purpose.

**Modification of Payment Terms.** The Reorganized Debtors reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**Entire Agreement.** The Plan and Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No Person will be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**Principal Purpose.** The entry of the Confirmation Order shall be deemed to be a determination that neither the Plan as a whole nor any particular provision of the Plan has avoidance of taxes as a principal purpose, and the Confirmation Order shall so provide.

***Severability of Plan Provisions.*** If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, subject to the consent of GE and the Creditors Committee, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

***Confirmation Order and Plan Control.*** To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtors and any third party, unless otherwise expressly provided in the Plan, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (any and other orders of the Court) will be construed together and consistent with the terms of the Plan.

***Computation of Time.*** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

**HOLDERS OF CLAIMS AND MEMBERSHIP INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES.**

**THE DEBTORS' BANKRUPTCY COUNSEL HAS NO TAX EXPERTISE AND HAS NOT RESEARCHED OR ANALYZED TAX CONSEQUENCES RESULTING FROM THE PLAN.**

## VOTING ON AND CONFIRMATION OF THE PLAN

### Confirmation and Acceptance by All Impaired Classes

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if all of the requirements of Bankruptcy Code Section 1129 are met. Among the requirements for confirmation of a plan are that the plan be accepted by all impaired classes of claims and membership interests, and satisfaction of the matters described below.

*Feasibility.* A plan may be confirmed only if it is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor. The Debtors believe that the parties will be able to perform their obligations under the Plan without further financial reorganization.

The Plan basically provides for payment to Holders of Allowed Claims, including contingent, unliquidated, and Disputed Claims to the extent they become Allowed Claims, in the order of their priority. Accordingly, the Debtors believe that the Plan is *per se* feasible.

The obligations under the Plan to Holders of contingent, unliquidated, and Disputed Claims cannot be ascertained without the determination of the validity and amount of those Claims by the Bankruptcy Court. Until the Claim determination process is complete, the exact amount to be received by Unsecured Creditors cannot be ascertained.

*Best Interests Standard.* The Bankruptcy Code requires that the Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the Plan, property having a value not less than the amount which the Class members would have received or retained if the Debtors were liquidated under Chapter 7 on the same date. The Debtors believe that distributions to all Impaired Classes of Claims in accordance with the terms of the Plan would exceed the net distribution that would otherwise take place in Chapter 7.

### Confirmation Without Acceptance by All Impaired Classes

If one or more of the Impaired Classes of Claims or Membership Interests does not accept the Plan, the Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram-down" provisions of the Bankruptcy Code, if the Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Plan.

*Discriminate Unfairly.* The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. The Debtors believe that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Membership Interests because no class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

*Fair and Equitable Standard.* The "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its allowed claims or interests before any junior class receives any distribution. The Debtors believe the Plan is fair and equitable to all Classes pursuant to this standard.

With respect to the Impaired Classes of Unsecured Claims, Bankruptcy Code Section 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that (i) each holder of a claim of such a class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the Holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest. The Debtors believe that the Plan meets these standards.

The Debtors intend to evaluate the results of the balloting and determine whether to seek Confirmation of the Plan in the event that less than all the Impaired Classes of Claims do not vote to accept the Plan. The determination as to whether to seek Confirmation under such circumstances will be announced before or at the Confirmation Hearing.

### Absolute Priority Rule

The Bankruptcy Code and other applicable law establish the priority for distribution of funds in bankruptcy cases. These priority provisions are sometimes referred to as the "absolute priority" rule. Normally, and subject to exceptions not relevant here, valid secured claims are first paid to the extent of the amount of the claim or the value of the claimant's collateral (if less than the claim).

Any property in the Estates, net of the valid secured claims described above, is first distributed to holders of priority claims, including (a) the costs of administering the Reorganization Cases; (b) certain wage and benefit claims; and (c) certain tax claims. After payment of priority claims, unsecured creditors share pro rata in the remaining funds until paid in full. Holders of Membership Interests are paid only after all creditors have been paid.

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed, the potential alternatives include (a) alternative plans under Chapter 11 (including a liquidation plan), (b) dismissal of the cases, or (c) conversion of the cases to cases under Chapter 7 of the Bankruptcy Code.

### Alternative Plans of Reorganization

If the Plan is not confirmed, the Debtors could attempt to formulate and propose a different plan or plans. The Debtors believe that the Plan will enable Creditors to be paid the maximum amount possible for their Allowed Claims.

### Liquidation under Chapter 7 or Chapter 11

If a plan is not confirmed, the Reorganization Cases may be converted to Chapter 7 liquidation cases. In Chapter 7 cases, a trustee would be appointed to liquidate the assets of

the Debtors. Converting the cases to Chapter 7 would simply add an additional layer of administrative expenses to the Estates which would substantially reduce and possibly eliminate any funds available for distribution to Unsecured Creditors. The proceeds of the liquidation would be distributed to the Creditors of the Debtors in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtors believe that liquidation under Chapter 7 would result in diminution of the value of the interests of the Creditors because of (a) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants, and other professionals to assist such trustee; (b) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (c) failure to realize the full value of the Debtors' assets; (d) the inability to utilize the work-product and knowledge of the Debtors and their Professionals; (e) the substantial delay which would elapse before Creditors would receive any distribution in respect of their Claims; and (f) the loss to Unsecured Creditors.

The Debtors believe that the Plan is superior to liquidation under Chapter 7 or Chapter 11.

## SUMMARY, RECOMMENDATION AND CONCLUSION

The Debtors believe that the Plan is in the best interests of all Creditors because in the event of a liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code, the Debtors believe there would be no distribution to Unsecured Creditors. For these reasons, the Debtors urge that the Plan is in the best interests of all Creditors and that the Plan be accepted.

\*   \*   \*   \*   \*

E-Brands Restaurants, LLC,
Timpano of Maryland, LLC,
Timpano Acquisition, LLC,
Samba Room Acquisition, LLC,
Aquaknox, LLC,
Star Concepts Acquisition, LLC,
DBEB, LLC

By: _____

CHARLES E. ROBINSON
Chief Manager and President of E-Brands
Restaurants, LLC, as the Sole Member of
Timpano of Maryland, LLC, Timpano
Acquisition, LLC, Samba Room Acquisition,
LLC, Aquaknox, LLC, Star Concepts
Acquisition, LLC and DBEB, LLC

/s/ Richard C. Prosser
Richard C. Prosser (FBN 354831)
Stephen R. Leslie (FBN 0000349)
Amy Denton Harris (FBN 0634506)
**Stichter, Riedel, Blain & Prosser, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
**Email: rprosser@srbp.com**
        sleslie@srbp.com
        aharris@srbp.com
**Counsel for Debtors and
Debtors In Possession**

# EXHIBIT "A"

# PROJECTIONS

# E-Brands

## Financial Overview

*($ in 000's, except per share data)*

| Fiscal Years ending December 31, | PF FYE 2010 | PROJECTED FYE 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | CAGR 2010-2016 |
|---|---|---|---|---|---|---|---|---|
| No. of Restaurants at Year End | 9 | 9 | 9 | 9 | 9 | 9 | 9 | |
| Total Restaurant Net Sales | $32,996 | $33,916 | $34,989 | $35,592 | $36,304 | $37,030 | $37,771 | 2.3% |
| Store Level EBITDAR | $6,607 | $6,373 | $6,580 | $6,707 | $6,878 | $7,053 | $7,232 | 1.5% |
| *% of Total Restaurant Net Sales* | 20.0% | 18.8% | 18.8% | 18.8% | 18.9% | 19.0% | 19.1% | |
| Cash Rent | $2,090 | $2,243 | $2,321 | $2,341 | $2,396 | $2,429 | $2,455 | |
| *% of Total Restaurant Net Sales* | 6.3% | 6.6% | 6.6% | 6.6% | 6.6% | 6.6% | 6.5% | |
| Store Level EBITDA | $4,517 | $4,131 | $4,259 | $4,366 | $4,482 | $4,624 | $4,777 | 0.9% |
| *% of Total Restaurant Net Sales* | 13.7% | 12.2% | 12.2% | 12.3% | 12.3% | 12.5% | 12.6% | |
| G&A Expenses | $2,028 | $2,028 | $2,067 | $2,113 | $2,160 | $2,209 | $2,258 | |
| *% of Total Restaurant Net Sales* | 6.1% | 6.0% | 5.9% | 5.9% | 6.0% | 6.0% | 6.0% | |
| Management Fee from La Dolbe | ($220) | ($220) | ($220) | ($220) | ($220) | ($220) | ($220) | |
| **EBITDA** | **$2,709** | **$2,322** | **$2,412** | **$2,473** | **$2,542** | **$2,636** | **$2,739** | **0.2%** |
| *% of Total Restaurant Net Sales* | 8.2% | 6.8% | 6.9% | 6.9% | 7.0% | 7.1% | 7.3% | |
| Maintenance Capital Expenditures | $131 | $120 | $120 | $120 | $120 | $120 | $120 | |
| Remodel Capital Expenditures | - | - | 600 | 600 | 600 | 300 | 300 | |
| Total Cash Expenditures | $131 | $120 | $720 | $720 | $720 | $420 | $420 | |
| *Operating Assumptions* | | | | | | | | |
| Total Revenue Growth | | 2.8% | 3.2% | 1.7% | 2.0% | 2.0% | 2.0% | |
| Store Level EBITDAR | 20.0% | 18.8% | 18.8% | 18.8% | 18.9% | 19.0% | 19.1% | |
| Remodel Capital Expenditures per Store | | 300 | 300 | 300 | 300 | 300 | 300 | |
| Maintenance Cap Ex per Store excl. Canonita Express | $131 | $15 | $15 | $15 | $15 | $15 | $15 | |
| G&A Growth Rate | | 0.0% | 1.9% | 2.2% | 2.2% | 2.2% | 2.2% | |

# EXHIBIT "B"

# LIQUIDATION ANALYSIS

Liquidation Analysis for E-Brands Restaurants, LLC et. al
Jointly Administered Under Case No. 8:10-18282-bk-KRM
As of August 23, 2010 (Unless Otherwise Specified Below)

| Asset | Going Concern Value* | FN | Liquidation Value* | FN | Secured Claims[1] | Amount Available in Liquidation |
|---|---|---|---|---|---|---|
| **Personal Property:** | | | | | | |
| Cash (on hand and in accounts) | $ 928,862.26 | | $ 928,862.26 | | $ 928,862.26 | $ - |
| Accounts Receivable | 296,197.91 | | 74,049.48 | | 74,049.48 | - |
| Inventory | 767,362.34 | | 53,715.36 | | 53,715.36 | - |
| Point of Sale Equipment | 10,000.00 | | 1,000.00 | | 1,000.00 | - |
| Furniture, Fixtures and Equipment | 1,000,000.00 | | 50,000.00 | | 50,000.00 | - |
| Note Receivable:[2] | 1,644,222.00 | | 1,006,172.00 | | - | 1,006,172.00 |
| Leasehold Improvements | 2,500,000.00 | | - | | - | |
| **Total Assets** | $ 7,146,644.51 | | $ 2,113,799.10 | 3 | $ 1,107,627.10 | $ 1,006,172.00 |
| | | | | | | |
| **Schedule of Distributions to Unsecured Creditors** | | | | | | |
| | | | | | | |
| **Hypothetical Chapter 7:** | | | | | | |
| Total Funds Available After Payment of Secured Claims | $ 1,006,172.00 | | | | | |
| Chapter 7 Administrative Expense Claims (Trustee and Professional Fees and Wind Down Expenses) | 300,000.00 | | | | | |
| Chapter 11 Administrative Expense Claims | 1,700,000.00 | | | | | |
| Funds Available for Distribution to Unsecured Creditors After Payment of Administrative Expense Claims | (993,828.00) | 4 | | | | |
| Unsecured Claims | 23,569,916.31 | | | | | |
| Projected Percentage Distribution | 0.00% | | | | | |
| | | | | | | |
| **Chapter 11:** | | | | | | |
| Unsecured Claims | $ 11,220,574.42 | 5 | | | | |
| Distribution to Unsecured Creditors Under the Joint Plan of Reorganization (Minimum)[5] | 750,000.00 | 6 | | | | |
| Projected Minimum Percentage Distribution | 6.68% | | | | | |

* Values set forth on this Liquidation Analysis are based on the good faith estimates of the Debtors' management. Management has no special training in the valuation of assets.

1 The value of the Secured Claims exceed the Liquidation Value of the Debtors' assets.

2 The Debtors have a note receivable from La Dolbe, LLC ("La Dolbe"), an entity which operates a concept restaurant in Orlando, Florida. Collectability of the note is contingent upon La Dolbe having net operating income and positive cash flow to perform its obligations under the note. In the event of a liquidation of La Dolbe's assets, the Debtors' management does not believe that the note would be collectible as all of La Dolbe's assets are subject to a lien in favor of Banco Popular.

3 The enterprise value of the Debtors, based upon the treatment provided to GE in Class 4 and the New Value Equity Contribution, is approximately $10 million. The difference between the enterprise value and the going concern value set forth herein may be attributable to intangibles.

4 Based upon scheduled and filed claims as of September 17, 2010 in the amount of $11,220,574.42 as well as an estimated unsecured claim for GE in the amount of $12,349,341.89 (based upon the difference between GE's asserted claim of $11,220,574.42 and the New Value Equity Contribution.

5 Based upon scheduled and filed claims as of September 17, 2010 in the amount of $11,220,574.42. The Debtors reserve the right to object to any scheduled and/or filed claims.

6 See Sections 1.26 and 5.08 of the Plan.

# EXHIBIT "C"

# FORM OF BALLOT

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| E-BRANDS RESTAURANTS, LLC , | Case No. 8:10-bk-18282-KRM |
| TIMPANO OF MARYLAND, LLC, | Case No. 8:10-bk-18297-KRM |
| TIMPANO ACQUISITION, LLC, | Case No. 8:10-bk-18286-KRM |
| SAMBA ROOM ACQUISITION, LLC, | Case No. 8:10-bk-18290-KRM |
| AQUAKNOX, LLC, | Case No. 8:10-bk-18278-KRM |
| STAR CONCEPTS ACQUISITION, LLC, | Case No. 8:10-bk-18292-KRM |
| DBEB, LLC, | Case No. 8:10-bk-18295-KRM |
| Debtors. _____/ | (Jointly Administered Under Case No. 8:10-bk-18282) |

## BALLOT FOR ACCEPTING OR REJECTING
## DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION

The First Amended Plan of Reorganization (the "**Plan**") referred to in this Ballot can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of membership interests in each class voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class or classes rejecting it and otherwise satisfies the requirements of §1129(b) of the Bankruptcy Code. To have your vote count, you must complete and return this ballot.

**Name of Creditor:** _____

**Amount of Claim $**_____     **Class:** _____

The undersigned, a creditor of the above-name Debtors in the unpaid principal amount stated above,

[   ] Accepts                    [   ] Rejects

the Plan proposed by the Debtors.

Signed:_____

Print or Type Name:_____

Title:_____

Name of Company:_____

Address:_____

| This ballot must be **received** on or before February 17, 2011, by the Court at the following address:<br><br>Clerk, United States Bankruptcy Court<br>Sam M. Gibbons U.S. Courthouse<br>801 North Florida Ave., Ste. 555<br>Tampa, Florida 33602-3826 | A copy of this ballot is to be sent to:<br><br>Richard C. Prosser<br>Stichter, Riedel, Blain & Prosser, P.A.<br>110 East Madison St., Ste. 200<br>Tampa, Florida 33602 |
| --- | --- |

| SUMMARY OF CLASSIFICIATION OF CLAIMS OR INTERESTS<br>[For a full description of the claims or interests in each class,<br>please refer to the Debtor's Plan of Reorganization] | |
| --- | --- |
| **Class** | **Description of Claim or Interest** |
| Class 1 | Priority Claims |
| Class 2 | Prepetition PACA Claims |
| Class 3 | Secured Claim of AEL |
| Class 4 | Secured Claim of GE |
| Class 5 | Secured Claims Not Otherwise Classified |
| Class 6 | Unsecured Claims |
| Class 7 | Intercompany Claims |
| Class 8 | Membership Interests in E-Brands Restaurants, LLC |
| Class 9 | Subsidiary Membership Interests Except DBEB, LLC |
| Class 10 | Membership Interests in DBEB, LLC |