## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| E-BRANDS RESTAURANTS, LLC, | Case No.:  8:10-bk-18282-KRM |
| TIMPANO OF MARYLAND, LLC, | Case No.:  8:10-bk-18297-KRM |
| TIMPANO ACQUISITION, LLC, | Case No.:  8:10-bk-18286-KRM |
| SAMBA ROOM ACQUISITION, LLC, | Case No.:  8:10-bk-18290-KRM |
| AQUAKNOX, LLC, | Case No.:  8:10-bk-18278-KRM |
| STAR CONCEPTS ACQUISITION, LLC, | Case No.:  8:10-bk-18292-KRM |
| DBEB, LLC, | Case No.:  8:10-bk-18295-KRM |
| Debtors. | (Jointly Administered Under Case No. 8:10-bk-18282-KRM) |

## SUPPLEMENTAL CONFIRMATION ORDER APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT AND CONFIRMING THE DEBTORS' JANUARY 31, 2011 FIRST AMENDED CHAPTER 11 PLAN

These Chapter 11 cases came on for hearing on February 25, 2011 at 10:30 a.m. and 1:45 p.m., for confirmation of the First Amended Plan of Reorganization for E-Brands Restaurants, LLC and Its Affiliated Debtors and Debtors in Possession Under Chapter 11 of the United States Bankruptcy Code [Doc. No. 313] (the "**Plan**"), the Amendment to First Amended Plan of Reorganization for E-Brands Restaurants, LLC and Its Affiliated Debtors and Debtors in Possession Under Chapter 11 of the United States Bankruptcy Code [Doc. No. 314] (the "**Amendment**") proposed by Debtors E-Brands Restaurants, LLC, ("**E-Brands**"), Timpano of Maryland, LLC, Timpano Acquisition, LLC, Samba Room Acquisition, LLC, Aquaknox, LLC, Star Concepts Acquisition, LLC and DBEB, LLC (collectively, the "**Debtors**").  On February 1, 2011, this Court entered its Order Conditionally Approving First Amended Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement,

Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing [Doc. No. 318] (the "**Conditional Approval Order**"). Several objections have been filed to the Plan (collectively, the "**Objections**"). The Court has reviewed the Objections, the Ballot Tabulation Report [Doc. No. 409] (the "**Ballot Report**"), heard testimony or unrefuted proffers by counsel at the Confirmation Hearing, including Mr. Michael Wood as the President of the Purchaser, Mr. Jeb Ball, and Mr. Charly Robinson, who were present in the Courtroom, available for cross examination, and each had executed the Confirmation Affidavit, reviewed exhibits entered into evidence, and heard argument of counsel. On February 25, 2011, this Court entered its Order Confirming Debtors' Amended Plan and Granting Emergency Motion of the Official Committee of Unsecured Creditors to Designate John D. Emmanuel as Debtor Designee under the Plan for all Purposes [Doc. No. 422] Based on the foregoing, and all of the pleadings and documents filed in the above-referenced bankruptcy cases (collectively, "**Bankruptcy Case**"), this Court makes the following findings of fact and conclusions of law regarding confirmation of the Plan under 11 U.S.C. §§ 1126 AND 1129(a) and (b) as well as Fed. R. Bankr. Pro. 3020.

## FINDINGS OF FACT

1.    Capitalized terms used in this Order that are not otherwise defined in this Order shall have the meaning ascribed to those terms in the Plan and the Disclosure Statement.

2.    Debtors filed their Chapter 11 petitions on July 30, 2010.

3.    The Debtors were and are qualified to be Debtors under 11 U.S.C. § 109(a) and had the requisite corporate authority to file for bankruptcy protection.

4.    On August 27, 2010 [Doc. No. 79] the Committee was appointed. Gray Robinson was approved as counsel to the Committee pursuant to Order dated October 28, 2010 [Doc. No. 82] ("**Committee Counsel**") and GlassRatner was approved as financial

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

advisors to the Committee pursuant to Order dated December 15, 2010 [Doc. No. 251] (the "**Committee Financial Advisors**").

5.    John Emmanuel was appointed Examiner pursuant to Order dated February 18, 2011 [Doc. No. 377]) and continues to serve ("**Examiner**").

6.    On January 31, 2011, Debtors filed the Plan and the Amendment.

7.    The Conditional Approval Order set a number of deadlines for ballots, objections, fee applications and the like.  Some of those deadlines have been extended by other Court orders.

8.    By separate orders or under the Plan, Debtors are assuming certain executory contracts and unexpired leases.

9.    On February 23, 2011 the Trust Agreement was filed.  [Doc. No. 398.]

10.    The Committee has designated Tom Santoro to serve as the Plan Administrator.  His contact information is c/o GlassRatner Advisory and Capital Group, 799 Brickell Plaza, Suite 701, Miami, FL 33131.  The Plan Administrator is a representative of the estate pursuant to Section 1123(b)(3), and as such is not a representative of the Debtors or the Reorganized Debtors.

11.    The Plan is premised on an auction of E-Brands' New Equity Interests.

12.    On January 31, 2011, the Court entered its Order Approving Bid Procedures [Doc. No. 316] which is a part of and incorporated into the Plan (the "**Bid Procedures**") and which set the auction for February 23, 2011 (the "**Auction**").

13.    All known holders of claims against Debtors, and all other persons entitled to notice, were provided timely and proper notice of the Disclosure Statement, the Plan, the Amendment, the Bid Procedures, the Auction and the Confirmation Hearing in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and all scheduling orders regarding the hearing to consider final approval of the Disclosure Statement confirmation of the Plan pursuant to 11 U.S.C. § 1128.

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

14.     The New Value Equity Participants unilaterally decided not to participate in the Auction prior to commencement of the Auction, and chose to file on February 24, 2011 a Notice purportedly seeking to abandon and assign their membership interest in the debtors back to the Debtors  prior to the confirmation hearing. [Doc. No. 414]

15.     On February 18, 2011 counsel for the Debtors gave notice to the Walt Disney World Company of the disclosure statement, the plan, the ballot and bid procedures ( D. E. 387 and 388), as the plan addresses the La Dolbe Causes of Action, the La Dolbe Management Agreement and the La Dolbe Note.  Counsel for debtors notified the Walt Disney World company regarding the results of the Auction.  No formal or informal objections to the plan, the disclosure statement, the bid procedures or the auction results have been filed by the Walt Disney World Company.

16.     Objections by GE and the Committee were made to the exculpation and indemnification of management of the debtors, E-Brands members and the New Value Equity Participants for conduct both pre- and post-petition.

17.     The Auction was conducted on February 23, 2011, in accordance with the Bid Procedures, and two Qualified Bidders attended and participated in the Auction.

18.     The Auction, which was transcribed, was conducted in a reasonable, fair and non-collusive manner.

19.     At the conclusion of the bidding, the Auction was closed, and, in accordance with the Bid Procedures, GE selected the highest and best offer for the New Equity Interests which was submitted by Noble Corp. (together with any assigns, "**Purchaser**"), which, as of the Effective Date, shall own all of the New Equity Interests in the Reorganized E-Brands. The Examiner, the Debtors and the Committee concurred in GE's selection.

20.     The terms of the Purchase are as set forth in the Amended and Restated Membership Purchase Agreement.  A true and correct copy of the executed document is attached hereto as "**Exhibit 1**" (the "**Purchase Agreement**") and all of its contents are

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

incorporated herein by reference. To the extent of any inconsistencies between this Court Order and the Purchase Agreement, the Purchase Agreement shall control.

21.    The Auction concluded a non-collusive, fair and good faith sale process.

22.    The other bidder, BINS, Corp. agreed to be the Back-Up Bidder under certain terms and conditions though as of the Confirmation Hearing, GE, the Debtors and the Committee have not agreed to the conditions requested by the back-up bidder. Should BINS, Corp. become a back-up bidder, its terms and conditions shall be contained in a separate order of court.

23.    The Purchaser is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and entitled to all of the protections of this subsection, including the protections should this Order be reversed or modified on appeal.

24.    The Membership Interests in E-Brands are to be cancelled as of the Effective Date.

25.    The Subsidiary Membership Interests, classified as Class 9 under the Plan remain unaffected by the Plan and shall owned by Reorganized E-Brands as of the Effective Date.

26.    The Membership Interests in DBEB, classified as Class 10, and the inter-company claims that are preserved under Class 7 under the Plan, shall be transferred to the Plan Administrator on the Effective Date to be held, abandoned and/or administered in accordance with the Plan and the Trust Agreement.

27.    The Debtors solicited votes for the Plan in good faith and in a manner consistent with 11 U.S.C. §§ 1125 and 1126 and Fed. R. Bankr. P. 3017 and 3018.

28.    On February 25, 2011, following hearings on ancillary matters related to the Plan and the Amendment, the Court first considered the adequacy of the Disclosure Statement which had been approved on an interim basis pursuant to the Conditional Approval Order, and then conducted the hearing on the Plan and the Amendment.

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

29.    The Court was advised that the Purchaser does not wish to pursue the election provided for in the Amendment which renders the objection of GE to the Amendment moot, and the Amendment is hereby deemed withdrawn.

30.    The Disclosure Statement contains "adequate information" as that term is defined in 11 U.S.C. § 1125(a)(1).

31.    The Plan satisfied the requirements of 11 U.S.C. § 1123(a) and the permissible provisions of 11 U.S.C. § 1123(b).

32.    The Plan complies with the provisions of 11 U.S.C. § 1123(b)(1) with respect to the classification and impairment or unimpairment of Claims and Equity Interests.

33.    The Plan complies with the applicable provisions of Title 11 of the United States Code, in compliance with 11 U.S.C. § 1129(a)(1).  Debtors have complied with the applicable provisions of the Bankruptcy Code, in compliance with 11 U.S.C. § 1129(a)(2).

34.    The Plan has been proposed in good faith and not by any means forbidden by law, in compliance with 11 U.S.C. §1129(a)(3).

35.    All payments made or to be made in connection with this case or in connection with the Plan either have been approved by or are subject to approval of the Bankruptcy Court, in compliance with 11 U.S.C. §1129(a)(4).

36.    The identity, qualifications, and affiliations of the persons who are to be directors or officers, if any, of Debtors after confirmation of the Plan have been fully disclosed at the Confirmation Hearing, and the appointment of such persons to such offices, or their continuance therein, is consistent with the interests of the creditors and equity security holders, and with public policy, in compliance with 11 U.S.C. §1129(a)(5)(A).

37.    The Reorganized Debtors are not retaining any insiders associated with the Debtors in Possession post confirmation so that any disclosures required by 11 U.S.C. § 1129(a)(5)(B) are not applicable.  Additionally, pursuant to the Notice of Abandonment, all

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

of the former members of the Debtor E-Brands have apparently relinquished all management authority at the close of business on Tuesday, February 22, 2011.

38.   The Plan complies with the requirements of 11 U.S.C. §1129(a)(6). There are no governmental regulatory commissions with jurisdiction after confirmation of the Plan whose approval is needed for rate schedules.

39.   With respect to each impaired Class of Claims, each Holder of a Claim of such Class has either (a) accepted the Plan, or, if a Class consists of more than one claimant, more than one-half in number and more than two-thirds in dollar amount have accepted the Plan; or (b) will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under Chapter 7 of Title 11 on such date, in compliance with 11 U.S.C. §1129(a)(7). This finding is buttressed by Debtors' liquidation analysis included in the Disclosure Statement.

40.   Pursuant to the Ballot Report, the Plan has been accepted by Classes 1, 2, 4, 5, 6, 7, 8, 9, and 10.  It has been rejected by Class 3. but the Class 3 claimant did not file any objection to the Plan.  The Court finds that the Plan does not discriminate unfairly and is fair and equitable and therefore satisfies the requirements of Bankruptcy Code Section 1129(b)(1) and 1129(b)(2)(B), in lieu of 1129(a)(8).

41.   The Plan provides for the treatment of the Administrative and Priority Claims in the manner required by 11 U.S.C. §1129(a)(9).

42.   At least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptances of the Plan by any insider, in accordance with 11 U.S.C. § 1129(a)(10).

43.   Confirmation of the Plan is not likely to be followed by further financial reorganization by Debtors, as required by 11 U.S.C. § 1129(a)(11). The Plan is feasible and has a reasonable probability of success.

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

44. All fees payable under Section 1930 of Title 28, as determined by the Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payment of such fees on the Effective Date of the Plan as required by 11 U.S.C. § 1129(a)(12).

45. Debtors owe no retiree benefits, as that term is defined in 11 U.S.C. § 1129(a)(13), and has no obligation with respect to any such benefits.

46. Debtors are not subject to any Domestic Support Obligation orders, so the requirements of 11 U.S.C. § 1129(a)(14) are satisfied.

47. Debtors are not individuals, so 11 U.S.C. § 1129(a)(15) is inapplicable.

48. Each attorney or other professional employed by Debtors or the Committee, have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, 11 U.S.C. §1125.

49. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. §77(e)). There has been no objection by any governmental unit asserting such a claim with respect to the Plan.

50. All parties interested in bidding pursuant to the Bid Procedures Order, including the Purchaser and the Back-up Bidder were provided substantial information regarding the Debtors and their business.

51. The Plan is fair, equitable, reasonable and proper, is in the best interests of the Debtors' estate, and is binding on all Creditors.

52. All modifications to the Plan, either previously filed or announced in open Court and incorporated in this Order, satisfy the requirements of 11 U.S.C. §1127. The modifications meet the requirements of 11 U.S.C. §§1122 and 1123, and the Plan proponent has complied with 11 U.S.C. §1127.

53. The Purchaser has elected the Cash Option under the Plan.

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

54.     The provisions in the Purchase Agreement with respect to the exculpation of E-Brands as set forth in Paragraph 6(e) of the Purchase Agreement and this Confirmation Order (the "**Revised E-Brands Exculpation**") are reasonable and were a material inducement to the Purchaser based on the circumstances of the Closing and the purchase, reasonable notice and due process was afforded to all known and unknown, existing, foreseen and unforeseen Claimants whose rights are being foreclosed by the Revised E-Brands Exculpation.

55.     The La Dolbe Cause of Action that is defined under 1.97 of the Plan and the D&O policy are assets that belongs to the Plan Administrator; however, with respect to the La Dolbe Cause of Action the Plan Administrator agrees to assist the Purchaser in insuring that the La Dolbe Management Agreement and the La Dolbe Note are paid by La Dolbe while the Purchaser obtains any ratification from Disney on the assumption of the La Dolbe Management Agreement.   The express agreement between the Purchaser and the Plan Administrator shall be filed as a post confirmation modification pursuant 11 U.S.C. § 1127.

## CONCLUSIONS OF LAW

1.     Such of the foregoing Findings of Fact as are deemed to be Conclusions of Law are hereby adopted as Conclusions of Law and such of the following Conclusions of Law as are deemed to be Findings of Fact are adopted as such.

2.     This Court has jurisdiction over all matters provided in the Plan, pursuant to 28 U.S.C. §§1334 and 157(a). All matters in connection with the Plan and confirmation are core proceedings under 28 U.S.C. § 157(b)(2).

3.     Based on the evidence presented, the absence of any persuasive countervailing evidence, and the Findings of Fact set forth above, all provisions of 11 U.S.C. § 1129 (a) and (b) have been satisfied.

4.     All modifications to the Plan previously filed or announced in open Court and incorporated into this Order satisfy the requirements of 11 U.S.C. §1127.

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

5.      Based upon the conduct and actions of the management, officers and directors of the Debtors, the members of E-Brands and the New Value Equity Participants, which, among other matters resulted in the appointment of the Examiner and the court having to expand the powers of the Examiner at the Confirmation Hearing and the purported assignment and abandonment of member interests attempted by the members of E-Brands and other actions, such parties are not entitled to indemnification, exculpation and releases as contemplated under the Plan.

6.      The Court may properly retain jurisdiction over the matters set forth in the Plan and 11 U.S.C. § 1142.

7.      Good cause has been shown to exclude the members of E-Brands and any and all managers, directors and officers of the Debtors who held any position with the Debtors existing at any time prior to the Closing, and the New Value Equity Participants as Released Parties under the Plan.

8.      As to all other Released Parties under the Plan, with the exception noted in Paragraph 7 above, the releases provided for under the Plan are fair, reasonable and enforceable in accordance with their terms except as modified by the Confirmation Order.

9.      To the extent applicable, good cause has been shown for the Court to waive the requirements of Fed. R. Bankr. P. 3020(e).

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** as follows:

A.      This Court's February 25, 2011, Order Confirming Debtors' Amended Plan and Granting Emergency Motion of the Official Committee of Unsecured Creditors to Designate John D. Emmanuel as Debtor Designee under the Plan for all Purposes [Doc. No. 422] is incorporated herein by reference as if fully set forth herein. The aforementioned Order specifically contemplated that the Court would enter this supplemental order on

10

confirmation containing detailed findings, conclusions, which relate back to the February 25
2011 order. For the reasons stated above, the Disclosure Statement is approved.

B.     The Plan having previously been CONFIRMED, is hereby APPROVED in
accordance with Section 1129 of the Bankruptcy Code.   All objections to the Plan are
overruled, withdrawn or waived with the exception of the objection of GE and the
Committee to including the members of E-Brands, the managers, directors and officers of
the Debtors and the new Value Equity Participants as Released Parties under the Plan or to
providing the members of E-Brands, the managers, directors and officers of the Debtors and
any of the New Value Equity Participants with indemnification, and the Committee's limited
objection on the La Dolbe Cause of Action which this Court has already acknowledged in its
Findings of Fact.

C.     The Conditions Precedent to the Effective Date set forth in Section 10.02 of
the Plan have either been waived, satisfied or will be satisfied at Closing of the purchase.

D.     Notwithstanding anything contained in the Plan to the contrary, the Effective
Date of the Plan shall be shortened to occur on the same day as the Closing at any time
after the entry of this Confirmation Order.   On the Effective Date, the Plan shall be deemed
to be substantially consummated under 11 U.S.C. §§ 1101 and 1127(b).

E.     At Closing, Reorganized E-Brands is hereby authorized and directed to issue
the New Equity Interests in the name of the Purchaser.

F.     All distributions required under the Plan at Closing shall be made by Stichter
Riedel, Blain & Prosser, P.A. as the escrow agent ("**Escrow Agent**") in accordance with
Sections Z through CC of this Order.   for the adjustments described in paragraphs 3 and 6
of the Purchase Agreement.

G.     On the Effective Date, the Avoidance Actions, including the La Dolbe
Avoidance Action, except as limited herein, shall be transferred to the Plan Administrator to
be held, prosecuted, and the proceeds distributed in accordance with the Plan and the Trust.

11

H.    On the Effective Date, without any further action by any party, the following shall occur:

(i)    As set forth in Plan Paragraph 8.04, all property of Debtors (other than those assets to be transferred to the Plan Administrator) shall be transferred to the Reorganized Debtors free and clear of any and all Liens, Claims and Debts not expressly provided for in the Plan.

(ii)    Debtors' current bank accounts may remain in place, with signing authorization changed to reflect only Purchaser's designees as sole authorized signators at the sole option of Purchaser and with such depository bank ordered to effectuate the terms of this paragraph; and

(iii)    All assets not retained by the Reorganized Debtor, which includes the Debtor's D&O Policy, shall be administered by the Plan Administrator for the benefit of creditors, in accordance with the terms of the Plan.

I.    Purchaser is a good faith purchaser of the New Equity Interests, as that term is used in 11 U.S.C. § 363(m) and is entitled to all the protection afforded under that subsection, including protection should any party file an appeal or stay pending appeal of this Order.

J.    The Examiner is authorized, directed and ordered to take all such steps as may be necessary to effectuate and implement the terms and provisions of the Plan but only to the extent that such steps are approved by GE, the Committee, or an order of this Court.  The Examiner is authorized to do so, and is expressly authorized to execute all documents on behalf of Debtors, without further order of this Court pursuant to 11 U.S.C. § 1142 and Rule 70 of the Federal Rules of Civil Procedure made applicable hereto pursuant to Bankruptcy Rule 9014.

K.    The Plan Administrator may be changed in accordance with the Trust Agreement in a subsequent notice filed with the Court.

L.    The New Value Equity Participants Auction Deposit shall be retained by the escrow agent, until further order of this Court, without prejudice to the rights of all parties. Nothing in this Order shall be considered an adjudication as to what effect, if any, the filed Abandonments and Notice of Assignment of Membership Interests back to the debtors, has

on the post confirmation Closing contemplated by the Plan or whether the purported abandonment and assignment to the Debtors is a permissible ordinary course transaction within the meaning of 11 U.S.C. section 363.

M.    Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Cases are closed, this Court shall retain the fullest and most extensive jurisdiction over this case that is permitted under applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

N.    To the extent any inconsistencies exist between this Confirmation Order and the Plan, the terms of this Confirmation Order and the findings herein shall control.

O.    Except as otherwise provided in 11 U.S.C. §§ 1141(d)(1), 1141(d)(2) and 1141(d)(3) and the Confirmation Order, the Confirmation Order operates as a discharge from any Claim which arose before the Effective Date or any debt specified in 11 U.S.C. §§ 502(g), 502(h) and 502(i), whether or not a proof of claim was filed or allowed or the holder of such claim accepted the Plan.

P.    As of the Effective Date, the provisions of the Plan shall be enforceable in accordance with their respective terms against, and shall bind, Debtors and any holder of a Claim, Lien or Debt against, or Interest in, Debtors, including, in each case, all successors and assigns of any of the foregoing Persons, irrespective of whether the Claim or Interest is impaired under the Plan or the holder has accepted the Plan.

Q.    The requirements of the Plan are binding upon and govern the acts of, and are enforceable against, all persons including, without limitation, Creditors, all Holders of Claims, Liens or Debtors, all filing agents or, officers, title agents or companies, recorders, registrars, administrative agencies, governmental units and departments, agencies or officials thereof, secretaries of state, and all other persons who may be required by law, the duties of their office, or contract to accept, file, register, record or release any documents or

4821-7192-6024.3
44042/0002 cp

instruments, or who may be required to report or insure any title or state of title in or to any of the assets of one or more of the Debtors.

R.    Except as otherwise provided in the Plan, in this or any prior order of this Bankruptcy Court, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan or the bankruptcy case, each executory contract or unexpired lease of Debtors that is not or has not previously been assumed by order of this Bankruptcy Court or is not assumed under the Plan pursuant to this Order, is hereby rejected as of the Effective Date. **Any individual or entity wishing to file a proof of claim arising from the rejection of an executory contract or lease pursuant to the terms of the Plan, must file the claim with the Clerk of the Court within thirty (30) days of the date of this Order or the claim shall be forever barred, unless otherwise ordered by the Court.**

S.    Except as otherwise expressly provided in the Plan or in this Confirmation Order, this Confirmation Order operates as a discharge, pursuant to 11 U.S.C. § 1141(d), to the fullest extent permitted by applicable law, as of the Effective Date, of any and all Debts of, and Claims of any nature whatsoever against Debtors that arose at any time prior to the Effective Date. Without limiting the generality of the foregoing, on the Effective Date, Debtors and the Reorganized Debtors will be discharged from any Claim or debt that arose prior to the Confirmation Date and from any and all debts of the kind specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i), regardless of whether (a) a proof of claim based on such debt was filed pursuant to 11 U.S.C. § 501, (b) a Claim based on such debt is an Allowed Claim pursuant to 11 U.S.C. § 502, or (c) the holder of a Claim based on such debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all persons and entities, including all holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against Debtors or any of its respective

14

successors and assigns, or the assets or properties of any of them, any other or further Claims, debts, rights, causes of action, remedies, liabilities, or anything based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan. In accordance with the foregoing, except as specifically provided in the Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other debts and liabilities against Debtors, pursuant to 11 U.S.C. §§ 524 and 1141, and such discharge will void any judgment obtained against Debtors, at any time, to the extent that such judgment relates to a discharged Claim, Lien or Debt.

T.     Pursuant to 11 U.S.C. §§ 105, 1123, 1129 and 114, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or entities that have held, currently hold or may hold a Claim, Lien or other Debt, liability, or Equity Interest that is discharged pursuant to the terms of the Plan are permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, Lien, Debts, liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan or the Plan documents:

(a)     commencing or continuing in any manner any action or other proceeding against Debtors, the Reorganized Debtors, or their respective properties;

(b)     enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Debtors, the Reorganized Debtors, or their respective properties;

(c)     creating, perfecting or enforcing any lien or encumbrance against Debtors, the Reorganized Debtors, or their respective properties;

(d)     asserting a set-off, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to Debtors, the Reorganized Debtors or their respective properties;

15

(e)    commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or

(f)    attempting to collect from Debtors or the Reorganized Debtors or their respective properties, directly or indirectly, any obligation due that Person or entity that arose prior to the Effective Date.  By way of example, no Person or entity shall increase a charge or fee collectible from Reorganized Debtors or threaten or withhold a service, license, permit or refund otherwise due Reorganized Debtors or threaten to file or file any lien or cause of action against Reorganized Debtors or the assets Reorganized Debtors is to acquire from Debtors or otherwise take any action to interfere with Reorganized Debtors' operation of those assets, unless Reorganized Debtors agree to satisfy that creditor's pre-Effective Date claim against Debtors in whole or in part.  Nor shall any Person or entity seek to offset any amount due Debtors or Reorganized Debtors against any Debt due it from the Debtor that arose prior to the Effective Date.

U.    The Releases provided under the Plan in Sections 11.03, 11.04 and 11.05 of the Plan (the "**Releases**") are hereby approved with the following exceptions:

(i)    The E-Brands Members, the managers, officers and directors of E-Brands and the managers, officers and directors of the Debtors serving prior to the Effective Date and the New Value Equity Participants shall not be Released Parties under the Plan;

(ii)    The E-Brands Members, the managers, officers and directors of E-Brands and the managers, officers and directors of the Debtors serving prior to the Effective Date and the New Value Participants shall not be included in the Releases; and

(iii)    Sections 11.02 and 11.04 of the Plan shall exclude from their provisions, any pre-assumption amounts later determined to be due as year-end adjustments and/or reconciliation charges, either for the benefit of the detriment of the reorganized debtors for calendar years 2010, 2011, and more fully described in the lease assumption order with respect to any non-residential real property lease between any of the debtors and General Growth Properties.

V.    The reinstatement and other rights with respect to Indemnification set forth in Section 7.07 of the Plan shall not apply or include the E-Brands Members, the managers, officers and directors of E-Brands or the managers, officers and directors of the Debtors serving prior to the Effective Date or the New Value Equity Participants.

W.    **AFTER THE CLOSING, THE LIMITATIONS ON EXCULPATION FROM LIABILITY IN SECTION 11.03 OF THE PLAN (INCLUDING BUT NOT LIMITED TO**

16

**FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE) SHALL SPECIFICALLY NOT APPLY TO THE REORGANIZED DEBTORS AS THEY EXIST AFTER THE EFFECTIVE DATE AND ISSUANCE OF THE NEW EQUITY INTERESTS IN THE REORGANIZED DEBTORS, SO THAT NEITHER THE HOLDERS OF THE NEW EQUITY INTERESTS NOR THE REORGANIZED DEBTORS SHALL HAVE ANY LIABILITY FOR ANY AND ALL PRE-CLOSING ACTS WHATSOEVER OR ANY ACTIONS BY, ON BEHALF OF, AND/OR FOR ANY ONE OR MORE OF THE DEBTORS AND/OR ANY OF THEIR AGENTS PRIOR TO THE EFFECTIVE DATE, OR THEIR SHAREHOLDERS, MEMBERS, OFFICERS, MANAGERS OR DIRECTORS, INCLUDING WITHOUT LIMITATION ACTS OF FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE.**

X.    The assumption of the La Dolbe Management Agreement is hereby approved and Reorganized E-Brands is hereby authorized and directed to continue to manage the Paradiso Restaurant in accordance with the La Dolbe Management Agreement. The Court specifically retains jurisdiction on each and every issue in any way involving the La Dolbe Cause of Action, the La Dolbe Management Agreement and the La Dolbe Note.   For the avoidance of doubt, the La Dolbe Management Agreement cannot be terminated for any reason by any party, including but not limited to any change of control of the debtors or reorganized debtors as authorized by this court Confirmation of the Amended Plan, absent further order of this Court; so that this paragraph shall survive Closing.

Y.    At Closing, Buyer will deliver to the Escrow Agent, cash in the amount of $10,750,000, to be added to the $500,000 that the Buyer has already paid as a deposit in escrow.

Z.    At Closing, the Escrow Agent, shall remit:  (a) To GE, the GE Cash Payment in the amount of $9,290,000; (b) to the Plan Administrator, $430,000 and (c) $30,000 to be held by the Plan Administrator as the Purchase Price Escrow Amount (as defined in the Purchase Agreement).

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

AA.    Out of the Minimum Equity Auction Proceeds, the Escrow Agent shall pay:  (a) $750,000 to the Plan Administrator for distribution to the Holders of Allowed Claims in Class 6; and (b) $750,000 to Reorganized E-Brands.

BB.    As soon as practicable after Closing, Reorganized E-Brands shall pay (a) undisputed cure claims for assumed leases, (b) Allowed Professional fees and expenses, (c) Allowed 11 U.S.C. 503(b)(9) Claims, (d) Allowed Claims to pay the prepetition unpaid DBEB payroll and (e) Allowed Administrative Expense Claim related to Samba FTL rent consistent with the Plan.  To the extent that any of (a) through (e) are not Allowed Claims by Closing, Reorganized E-Brands shall pay such amount when such Claims specified in (a) through (e) are Allowed by Final Order of the Court.

CC.    Any funds remaining out of the Purchase Price Escrow Amount which are not required to be paid to the Purchaser under the terms of the Purchase Agreement shall be remitted as follows:  (a) seventy-five percent (75%) to GE; and (b) twenty-five percent (25%) retained by the Plan Administrator to be held in accordance with the Trust Agreement.    In the event that the Excess Equity Auction Proceeds are reduced in accordance with the Paragraphs 3 and 6 of the Purchase Agreement because of the provisions in the Purchase Agreement with respect to cash on hand as of the Effective Date and inventory levels as of the Effective Date, the reduction shall be allocated as between GE and the Committee, twenty-five percent (25%) for the Committee and seventy-five percent (75%) to GE.

DD.    Each and every Cause of Action, as defined under 1.23 of the Plan as well as the La Dolbe Cause of Action as defined under 1.97 of the Plan are hereby transferred to the Plan Administrator  to be administered in accordance with the provisions of this Order and the Trust Agreement.

EE.    Since the cases have not been substantively consolidated, in addition to the rights and duties articulated in the Trust Agreement, the Plan Administrator shall: (i) be

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

charged with the responsibility of allocating the purchase price to the Debtor entities; and (ii) be permitted to purchase the extended period and make other elections under the D&O Policy.

FF.    Based upon the announcements made in open Court and consideration of the February 24, 2011 Notice of Filing Abandonments and Notice of Assignment of Membership Interests by all holders of the debtors individual manager and all of the debtors individual holders of membership interests [Doc. No. 414] and the Emergency Motion to Expand the Authority of Examiner and Request for Related Relief by the Committee [Doc. No. 415], the Closing shall be no later than March 25, 2011, and shall be the same date to coincide with the Effective Date, which Effective Date shall be deemed to occur at 11:58 PM on such day, so that the Closing shall occur at 11:59 PM on the same day as the Effective Date and so that the Effective Date shall occur prior to the Closing.

GG.    All quarterly US trustee fees pursuant to 28 U.S.C. § 1930 ("**UST Fees**") shall be paid by the Debtors through the Effective Date.  Because of the unique nature of this case, in ruling on the payment of UST Fees, in addition to the statements and findings made by the Court at the hearing conducted on March 4, 2011, the Court considered the following:  (1) this case involves an Equity Auction pursuant to the new value corollary to the absolute priority rule as contemplated by *Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 119 S.Ct. 1411 (1999) and the establishment of a Liquidating Trust; (2) the successful bidder at the Equity Auction and, therefore, the owner of the New Equity Interests being issued pursuant to the Plan is not the same as the prepetition and pre-Effective date owners of the Debtors; (3) if the sale had been styled as an asset sale there would be no issue about payment of the UST Fees by the Reorganized Debtors; (4) the Equity Auction, as opposed to an asset sale, was required by the New Value Participants in order to move forward with the Plan; and (5) the Committee has advised that it was not opposed to allowing the US Trustee to raise the issue

19

of whether the Liquidating Trust should pay UST Fees on the disbursements made by the Plan Administrator from the Liquidating Trust. Therefore, based upon the foregoing, the Court concludes that Substantial Consummation with respect to the Reorganized Debtors will occur pursuant to 11 USC § 1101(2) when all of the following events occur: (i) the entry of the Order Confirming the Plan and this Supplemental Confirmation Order; (ii) the payments required under the Plan to GE and the Class 6 Creditors are made; (iii) all the Causes of Action as defined under 1.23 of the Plan and the LaDolbe Cause of Action as defined under 1.97 of the Plan are assigned to the Plan Administrator by virtue of this Supplemental Confirmation Order; and (iv) the Closing under the attached Amended and Restated Membership Interest Purchase Agreement and delivery to the Escrow Agent of the Purchase Price. Since the Confirmed Plan requires that the Plan Administrator and not the Reorganized Debtor be responsible for claims objections, prosecuting the two types of litigation described above under GG(iii), upon Substantial Consummation, the Court will retain jurisdiction over all duties and responsibilities assigned to the Plan Administrator under the Liquidating Trust Agreement. Upon Substantial Consummation as detailed above, none of the Reorganized Debtors nor the owners of the New Equity Interests in E-Brands shall have any liability for nor shall any of the Reorganized Debtors incur any UST Fees. With respect to the Liquidating Trust, this Order is without prejudice to the US Trustee seeking an further order of this Court regarding the liability, if any, of the Liquidating Trust for payment of UST Fees; provided, however, that such request shall be limited to and be calculated based upon any disbursements made or to be made by the Plan Administrator out of the Liquidating Trust and shall not include or apply to any disbursement made by or operations of the Reorganized Debtors after Substantial Consummation of the Confirmed. Until such time as Substantial Consummation of the Confirmed Plan as described above has occurred, all UST Fees shall be paid by the Reorganized Debtors.

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

HH.    The Examiner shall cooperate fully with and support the Purchaser in executing such applications and furnishing such documents as are necessary for the Purchaser to obtain an interim permit.  All applicable state, local and municipal liquor and license control boards or departments, as well as all law enforcement and regulatory agencies, shall not interrupt the existing business operations conducted by the Purchaser without first bringing the matter before this Court, and further that the existing business operations shall continue under existing licenses of the Debtor, until such licenses have been properly changed to reflect the Purchaser's name; including, but not limited to, state alcohol beverage licenses, state food service licenses, local occupational licenses, and any other licenses needed to operate the existing business operations without interruption.

II.    To the extent Debtors have posted security deposits (with landlords, utilities or otherwise, pre-Petition Date, those amounts may be setoff against Allowed Claims only upon entry of a Final Order authorizing such offset.  To the extent Debtors have posted security deposits (with landlords, utilities or otherwise) post-Petition Date, those amounts shall be the property of the Reorganized Debtors on and after the Effective Date, and shall not be offset against any Claim.

JJ.    This Court retains jurisdiction to hear such other matters as are necessary to enforce this Confirmation Order or the Plan, and to consider any objections to Claims, unresolved requests by landlords for cure claims, preference actions, fraudulent conveyance actions or any other claims or Causes of Action belonging to the Plan Administrator.  The Court further retains jurisdiction, so long as the case is open, to conduct periodic status conferences and to review and consider any disputes related to professional compensation.

KK.    The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order is hereby waived.  This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), or 7062.

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

LL.    The Plan Administrator, as a representative of the estate under 11 U.S.C. § 1123(b)(3), shall have the right to sue former directors, members, managers and officers of the Debtors under the D&O policy, and shall not be considered an insured party under the D&O policy.

MM.    On February 22, 2011, the Debtor filed its *Notice of Filing Amended Exhibit A – Executory Contracts and Unexpired Leases to the First Amended Plan of Reorganization for E-Brands Restaurants, LLC and Its Affiliated Debtors and Debtors in Possession Under Chapter 11 of the United States Bankruptcy Code* [Doc No. 395] which contained an attached schedule called "Amended Exhibit A – Executory Contracts and Unexpired Leases." The treatment of the nonresidential leases has previously been addressed in this Court's February 28, 2011 *Order and Supplemental Order Granting Motion to Assume Nonresidential Real Property Leases and Pay Related Cure Amounts* [Doc. No. 426].  The executory contracts listed as numbers 13 and 15, with cure claim amounts of $0.00, are hereby assumed.  Executory contract #14 ("La Dolbe Management Agreement") was previously addressed in paragraph "W" of this Order.  All other executory contracts not specifically assumed pursuant to the Plan and this court Order, are deemed rejected.  The contracting parties to any executory contract shall file any rejection damages claim within 30 days of this Order or such claim shall be forever barred and discharged and of no further effect.

NN.    The Purchaser shall reasonably cooperate with the Plan Administrator, at no cost or expense to the Purchaser, with regard to fulfilling his duties under the Trust Agreement.  Such cooperation shall include, but not be limited to, the Reorganized Debtor providing access to the Debtor's books and records on reasonable terms and conditions.

OO.    This Order and all related agreements and documents necessary to implement the Plan shall be binding upon and inure to the benefit of any successors and assigns of the

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

Debtor, including, without limitation, any trustee appointed for the Debtor in its Chapter 11 case or in any superseding case under Chapter 7 of the Bankruptcy Code.

PP.    **This Order shall be effective *nunc pro tunc* as of February 25, 2011, irrespective of when it is signed or docketed.**

DONE AND ORDERED in Tampa, Florida on _____ March 8 _____, 2011.

_____

K. RODNEY MAY
United States Bankruptcy Judge

Copies furnished to:

Committee: Maureen A. Vitucci, GrayRobinson, P.A., 301 E. Pine Street, Suite 1400, Orlando, FL 32801 and Frank Terzo, GrayRobinson, P.A., 1221 Brickell Avenue, Suite 1650, Miami, FL 33131-3259

Debtor: Richard C. Prosser and Stephen Leslie, Stichter, Riedel, Blain & Prosser PA, 110 E. Madison Street, Suite 200, Tampa, FL 33602

U.S. Trustee: Theresa M. Boatner, Office of the United States Trustee, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, FL 33602

Examiner: John D. Emmanuel, 501 E. Kennedy Blvd., Suite 1700, Tampa, .Florida 33602

Debtor: E-Brands Restaurants, LLC, 7680 Universal Blvd., Suite 195, Orlando, FL 32819

Purchaser: Roy S. Kobert, Broad and Cassel, 390 North Orange Avenue, Suite 1400, Orlando, FL 32801 and Kenneth Mather, Broad and Cassel, 100 North Tampa Street, Regions Bank Building, Suite 3500, Tampa, FL 33602

GE:  Susan Boswell, Quarles & Brady, LLP, One South Church Street, Suite 1700, Tucson, AZ 85701 and Phil Martino, Quarles & Brady, LLP, 101 East Kennedy Boulevard, Suite 3400, Tampa, FL 33602

Walt Disney World Company: Lori Sheehan, Vice President, Counsel, Walt Disney World Resort - Legal Department, 1375 Buena Vista Drive, Lake Buena Vista, Florida 32830

Debtors are directed to serve this Order on the all creditor matrix, other known parties in interest, and post it on the E-Brands website, and file a Certificate of Service.

4821-7192-6024.3
44042/0002 cp

QB\114411.00026\12663569.4

## AMENDED AND RESTATED
## MEMBERSHIP INTEREST PURCHASE AGREEMENT

This AMENDED AND RESTATED MEMBERSHIP INTEREST PURCHASE AGREEMENT (this "Agreement"), dated effective as of the 25th day of February, 2011, is by and between Noble Corporation, a Bahamian IBC, or its designee in accordance with Section 11(a) below (the "Buyer"), and E-Brands Restaurants, LLC, a Florida limited liability company, ("E-Brands") as debtor in possession and the to be reorganized debtor. When E-Brands is referred to in its capacity as debtor in possession, it will be referred to as the "Company". When E-Brands is referred to as the reorganized debtor, it will be referred to as the "Issuer."

### Background

A.      The Company is a debtor in bankruptcy.

B.      Pursuant to the First Amended Plan of Reorganization for the Company and its affiliated debtors and debtors in possession under Chapter 11 of the United States Bankruptcy Code (the "Plan"), which was confirmed by Order entered February 25, 2011, the New Equity Interests (as defined in the Plan) are being sold pursuant to the auction (the "Auction") that was held on February 23, 2011 pursuant to that certain Notice of Sale and Bid Procedures approved by the Bankruptcy Court on February 1, 2011 (the "Bid Procedures"). Unless otherwise defined in this Agreement, capitalized terms are defined in the Plan, which Plan is incorporated in and made a part of this Agreement.

C.      The Buyer did not receive the Purchase Agreement of the Initial Bidder to work off of. Accordingly, as part of the auction process, the Buyer submitted a form Agreement as part of its bid. During the course of the Auction, various amendments and changes to the Agreement were agreed to, as were certain changes to the Agreement subsequent to the Auction.

D.      This Agreement amends and restates in its entirety that certain Membership Interest Purchase Agreement submitted by the Buyer to the Issuer as a condition to be a Qualified Bidder under the Bid Procedures and incorporates the terms and conditions of the sale that were agreed to among the Buyer, GE, the Committee and the Company at the Auction and subsequent thereto.

### Agreement

In consideration of the mutual promises and understandings set forth below, and other valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      <u>Background</u>.  The provisions in the Background are true and correct and are incorporated herein by reference.

2.      <u>Purchase of New Equity Interests</u>.  At the Closing (defined below), the Issuer shall issue, sell and transfer, and the Buyer shall purchase, the New Equity Interests, by the execution and delivery to the Buyer of the Issuance of New Equity Interests (the "Issuance") in the form attached hereto as <u>Exhibit A</u>.

3.      <u>Purchase Price</u>.

(a)      In consideration for the purchase of the New Equity Interests, and in full payment therefor, Buyer shall pay Stichter Riedel Blain & Prosser, P.A., as escrow agent, $11,250,000 (the "Purchase Price"). The Purchase Price includes $8,500,000 payable to GE as part of the GE Cash Payment and the balance represents the Equity Auction Proceeds.



(b)     The Equity Auction Proceeds shall be adjusted per Sections 6(f), 6(g), 6(i), 6(j), and 6(p) below. The Plan Administrator shall receive $30,000 (the "Purchase Price Adjustment Escrow Amount") of the Equity Auction Proceeds to be held in escrow, pending such Purchase Price adjustments. When all such Purchase Price Adjustments have been made, the Plan Administrator shall remit to the Buyer the net amount of any Purchase Price reduction. Any such net reduction in excess of $30,000 shall be paid to the Buyer by the Plan Administrator and GE. If the amount of such net reduction is less than $30,000 (or if there is no net reduction in Purchase Price), the Plan Administrator shall distribute the remainder of the Purchase Price Escrow Amount in accordance with the Confirmation Order.

(c)     The Purchase Price (less the amount of the Purchase Price Escrow Amount) shall be distributed pursuant to the terms of the Confirmation Order. Of the Purchase Price, Buyer has paid $500,000 as a deposit in escrow, with such payment made to Stichter Riedel Blain & Prosser, P.A. ("Stichter Riedel"), as escrow agent. Upon the Closing, such escrow agent shall release the deposit in partial payment of the Purchase Price and Buyer shall remit the balance of $10,750,000 to Stichter Riedel to be held and paid in accordance with the terms of the Confirmation Order, provided that Stichter Riedel shall pay the Purchase Price Adjustment Escrow Amount to the Plan Administrator to be held in escrow and distributed in accordance with Section 3(b) above.

4.     Closing Condition. From the date of this Agreement to the closing of the transactions contemplated by this Agreement in the manner provided in the Bid Procedures, the Plan and the Confirmation Order (the "Closing"), the condition of the assets owned by the Company and/or by one or more Company subsidiaries shall not be materially adversely affected (determined on an aggregate basis, and not on an asset by asset basis). The Closing shall occur on the Effective Date.

5.     Representations and Warranties.

(a)     The parties represent, warrant and agree with each other that: (i) this Agreement has been carefully read by the parties; (ii) the contents of this Agreement are known and understood by the parties; and (iii) this Agreement is signed freely and willingly by each person executing this Agreement.

(b)     The Issuer represents and warrants as of the Effective Date and the Closing:

(i)     The Issuer has the authority and right to issue the New Equity Interests, free and clear of any restrictions on transfer, security interests, liens and options of any kind, and any and all other encumbrances (other than as disclosed in the Plan and related disclosures).

(ii)     There are no written or oral provisions applicable to the management and regulation of the affairs of the Company, or setting forth the relationships of the members, managers, or managing members and the Company, except as set forth in the Operating Agreement of the Company, dated as of December 30, 2002 (the "Operating Agreement"), and the Articles of Organization of the Company, dated as of September 18, 2002 (the "Articles"); true and correct copies of the Operating Agreement and the Articles have been previously supplied to the Buyer.

(iii)     The Issuer has all right and power to issue the New Equity Interests to the Buyer.

(iv)     The New Equity Interests represent all equity interests in the Issuer; no person has any rights to acquire the New Equity Interests or any other equity interests in the Issuer; no person has the right to become a member of the Issuer (including, without limitation, pursuant to

any warrant or option) other than pursuant to the Plan, or has any other rights under the Operating Agreement or Articles.

6.    Additional Agreements.

(a) Through the Closing, the Company covenants to operate in the ordinary course of business, in the same manner as its business has been conducted Postpetition.

(b) Effective as of the Closing, the Operating Agreement and the Articles shall be amended in the manner unilaterally acceptable by the Buyer.

(c) The Buyer hereby confirms its agreement to accept and abide by the terms, conditions, and procedures in the Bid Procedures Order which incorporates the Bid Procedures, except as otherwise provided herein.

(d) Immediately effective upon Closing, Issuer shall have taken all actions as may be required to cause the Buyer to be admitted as the sole member of Issuer.

(e) Pursuant to the Confirmation Order and after the Closing, the limitations on exculpation from liability in Section 11.03 of the Plan (i.e., for fraud, willful misconduct, or gross negligence) shall specifically not apply to the Company, so that the Company (and the Buyer, as intended beneficiary) shall not have any liability for any and all pre-Closing acts, including without limitation acts of fraud, willful misconduct, or gross negligence; such language must be specifically included in bold/capital/underline in the Confirmation Order, along with specific findings that such request was reasonable and a material inducement based on the circumstances of the Closing and the purchase and that reasonable notice and due process was afforded to all known and unknown, existing, foreseen and unforeseen Claimants whose rights are being foreclosed by this paragraph.

(f) The Bid (as defined in the Bid Procedures) is based upon the excel spreadsheet containing a list of expected Administrative Expenses to be paid by the Buyer (including, without limitation, lease and executory contract administrative expenses, lease and executory contract cure costs, administrative rent, professional fees and expenses, and prepetition PACA Claims entitled to priority, as more specifically described in Section 327, 328, 330, 502, 503, 507 of the Bankruptcy Code) which was attached to correspondence from Tina Williams (of Brookwood Associates) to Joshua Bilmes (of Tavistock) on February 18, 2011, at 3:13 PM, which expenses according to Issuer equals $2,388,443, not including the Priority Tax Claims. The Buyer is relying on the accuracy of the estoppels on that spreadsheet. The Purchase Price shall be reduced to the extent that the Administrative Expenses that are Allowed Claims, in the aggregate, exceed the Administrative Expenses reflected on that spreadsheet, in the aggregate.

(g) As of the Effective Date, cash on hand, to include the Minimum Equity Auction Proceeds, will be at least equal to the sum of all Allowed Claims relating to (i) Allowed rent cures for assumed leases, (ii) Allowed professional expenses, (iii) Allowed 503(b)(9) claims, (iv) Allowed Claims related to unpaid DBBB payroll, (v) Allowed administrative claims related to Samba FTL rent and (vi) $750,000 payment to the Committee. To the extent that cash on hand as of the Effective Date, including the Minimum Equity Auction Proceeds, is less than the sum of these Allowed Claims, the purchase price shall be reduced accordingly, dollar for dollar.

(h) The Confirmation Order will be satisfactory to the Buyer, whose approval may be given or withheld in its sole discretion, and satisfactory to the Debtors, the Committee, GE, and the Bankruptcy Court appointed Examiner, and shall include such reasonable provisions as shall ensure orderly continued operation of the Company's business, including without limitation with respect to

liquor licenses and other licenses and permits and the La Dolbe Management Agreement. The Buyer, the Creditors Committee, GE, and the Bankruptcy Court appointed Examiner agree to use their best efforts to draft and circulate a proposed Confirmation Order forthwith following the Auction with the stated goal of bringing a proposed Confirmation order to the Confirmation Hearing.

(i)  The Fourth Amendment to Lease between US Las Olas, LLC and Timpano Acquisition, LLC dated September 1, 2010, shall be effective as of the Closing at no cost to the Buyer, the Issuer, any of the Issuer's affiliates (including, without limitation, its direct and indirect subsidiaries), or any of the Debtors.

(j)  If the Samba Room/Orlando sale approved pursuant to the February 17, 2011 Order granting the assumption and assignment of the Samba Room/Orlando Lease and the related equipment and inventory to KJ Entertainment, LLC [Docket Entry 362] (the "Samba Room/Orlando Sale") is set aside as a result of the Motion to Reconsider by entry of a final, nonappealable order, the Issuer represents that a subsidiary of the Issuer shall own the Samba Room/Orlando Lease and the assets intended to be sold pursuant to the Samba Room/Orlando Sale and the Purchase Price shall increase in the amount of $200,000, with such proceeds being paid to GE.

(k)  The Buyer shall have the right to add to, reject, or designate another party to assume any one or more executory contracts and/or unexpired leases listed in Exhibit A of the Plan.

(l)  Notwithstanding anything in the Plan to the contrary, the Closing Date shall be on the Effective Date (as defined in the Plan), with the Closing being deemed to have occurred after the Effective Date at 11:59 PM one minute after the Effective Date (i.e., the Effective Date shall be at 11:58 PM and the Closing shall be at 11:59 PM after E-Brands becomes the Issuer and is no longer in bankruptcy). The Buyer, the Debtors, the Creditors Committee, GE, and the Bankruptcy Court appointed Examiner agree to seek a waiver from the Bankruptcy Court eliminating or shortening the fourteen-day period as part of the entry of the Confirmation Order and the finding that the Bidder is a good faith purchaser pursuant to Section 363(m) to facilitate the simultaneous Closing.

(m)  The Confirmation Order shall include a finding that the Buyer is a good faith purchaser under Section 363(m) of the Bankruptcy Code, as well as the incorporation of all of the terms of the Buyer's Bid, including without limitation the assumption of executory leases and contracts not rejected by the Buyer and the finding that the Buyer satisfies all of Section 365 of the Bankruptcy Code.

(n)  The Buyer satisfies the requirements of being a good faith purchaser under Section 363(m) of the Bankruptcy Code.

(o)  Paragraph 8 of the Bid Procedures is hereby specifically incorporated by reference.

(p)  As of the Effective Date of the Plan, food and beverage inventory at all stores excluding Samba Room/ Orlando, in aggregate, delivered at Closing shall not be less than 90% of January 24th values at the same stores, in aggregate; provided, however, that the value of the inventory as of January 24th at the stores which Buyer elects to reject the lease shall be included for purposes of determining the 90% threshold. In the event the aggregate inventory is less than 90% of the January 24th values, then the Purchase Price shall be adjusted dollar for dollar up to a total adjustment of $250,000.

(q)  As of the Effective Date of the Plan, (i) the La Dolbe Management Agreement and the La Dolbe Note shall be in full force and effect and enforceable by the Issuer without material offset

or credit, and the amounts payable under the La Dolbe Note and La Dolbe Management Agreement shall be and remain due and payable  (ii) there shall be no actual or threatened default by the Landlord under the Lease (as defined in the La Dolbe Management Agreement) resulting from or relating to this Agreement and/or the assumption of the La Dolbe Management Agreement under the Plan, and (iii) the Landlord under said Lease shall have confirmed in writing that the Lease remains in full force and effect without default, and, to the extent required under said Lease, the Landlord shall have provided any necessary consent to the assumption of the La Dolbe Management Agreement and/or the closing of the transactions contemplated under this Agreement or the Buyer has waived the condition of consent.

(r)  As of the Closing, all membership interests in the Company shall have been cancelled and the Issuer shall be the sole beneficial owner of each of the Debtors and the Purchaser shall be the sole owner of the new membership interests issued by the Issuer.

7.    Disclosures.  As required in paragraph 5F of the Bid Procedures, the Buyer hereby discloses that a subsidiary of the Buyer, Lake Nona Management Company, has entered into the following agreements with General Electric Company: Contribution Agreement dated September 20, 2010 and Purchase Agreement dated September 20, 2010.

8.    Further Assurances.  The parties shall (i) furnish upon request to each other such further information, (ii) execute and deliver to each other such other documents, and (iii) do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement and the documents referred to in this Agreement.

9.    Closing.  On the terms and subject to the conditions set forth in this Agreement, the Closing shall take place at such place, date and time as the parties mutually agree no later than March 25, 2011 ("Closing Date").  If agreed to by the parties, the Closing can be held without there being an actual meeting of the parties, with closing items to be conveyed by mail or express courier service or by email and with payments to be sent by wire.  Executed copies of signature pages sent by email may be relied upon and shall be as effective as the original signature pages.  Regardless of the time at which the Closing occurs, the Closing will be deemed for all purposes to have occurred at 11:59 p.m. (Eastern Time) on the Closing Date.

10.    Cooperation.  The Buyer agrees to cooperate with the Plan Administrator, provided that such cooperation results in no out-of-pocket cost to Buyer, as representative of the Debtor's estate, with regard to fulfilling his duties under the E-Brands Restaurant's Trust Agreement. Such cooperation shall include, but not be limited to, the Buyer providing access to the Debtor's books and records on reasonable terms and conditions.

11.    Miscellaneous.  (a) *Successors and Assigns*. This Agreement shall be binding in all respects upon, and shall inure to the benefit of, the heirs, successors, and assigns of the parties. The Buyer shall be permitted to assign this Agreement to an affiliate, provided that the Buyer shall remain obligated hereunder; (b) *Governing Law*. This Agreement shall be governed by the laws of the State of Florida; (c) *Severability*.  In the event that a court of competent jurisdiction enters a final judgment holding invalid any material provision of this agreement, the remainder of this Agreement shall be fully enforceable; (d) *Integration*. This Agreement contains the entire agreement of the parties relating to the subject matter hereto; (e) *Waiver or Modification*. No waiver or modification of this Agreement or of any covenant, condition, or limitation herein contained shall be valid unless in writing and duly executed by the party to be charged therewith; (f) *Headings*. The headings of Sections herein are intended solely for the convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement; (g) *Counterparts*. This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an

original, but such counterparts together shall constitute but one and the same instrument; (h) *Attorney's Fees and Costs*. In the event of any arbitration, action, dispute, litigation or other proceeding, including appeals, with respect to this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable fees, costs, and expenses of counsel incurred in connection with such arbitration, action, dispute, litigation or other proceeding, whether or not litigation is instituted, and if instituted, at both trial and appellate levels, in addition to any other relief to which the parties may be entitled; provided, however that Buyer shall not be entitled to any fees, costs or expenses in the submission of its bid for the Auction or any other proceedings with respect to confirmation of the Plan, entry of the Confirmation Order and occurrence of the Effective Date. (i) *Third-Party Beneficiaries*. This Agreement is not intended to confer upon any person other than the parties to this Agreement any rights or remedies hereunder; (j) *Survival of Representations and Warranties*. The representations and warranties in this Agreement shall survive the closing of the transactions contemplated by this Agreement; (k) *Waiver of Jury Trial*. The parties hereto knowingly, voluntarily and intentionally waive any right any of them may have to a trial by jury with respect to any litigation based hereon, or arising out of, under or in connection with this Agreement; (l) *Venue/Jurisdiction*. The parties hereto submit to the jurisdiction of the Bankruptcy Court for the Middle District of Florida, Tampa Division.

**IN WITNESS WHEREOF,** the parties hereto have signed this Agreement effective as of the date first above written.

Witnesses                                           Buyer

                                                    NOBLE CORPORATION

_Joshua Bilmor_

_Amanda Yeager_                                     By: _____
                                                    Name: _Michael I. Creed_
                                                    Title: _President_

                                                    Issuer

                                                    E-BRANDS RESTAURANTS, LLC

_____                   By: _____
_____                   Name: _____
                                                    Title: _____

**IN WITNESS WHEREOF,** the parties hereto have signed this Agreement effective as of the date first above written.

Witnesses

Buyer

NOBLE CORPORATION

By: _____
Name: _____
Title: _____

Issuer

E-BRANDS RESTAURANTS, LLC

By: _John D. Emmanuel_
Name: _John D. Emmanuel_
Title: _Court Appointed Examiner_
_with expanded powers_

## EXHIBIT A
## ISSUANCE OF MEMBERSHIP INTEREST

**KNOW ALL MEN BY THESE PRESENTS** that E-Brands Restaurants, LLC, a Florida limited liability company ("Assignor"), for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, for itself and its assigns hereby grants, issues, conveys, and delivers to [Noble Corporation or its designee] ("Assignee"), as an original issuance, the sole ownership interest as a member of E-Brands Restaurants, LLC, a Florida limited liability company (the "Company") and all rights, title, interests, duties and obligations in and relating to such interest, including, without limitation, the right to distributions of cash or property from operations, liquidation or otherwise and to the allocation of profits and losses and all other items of income, gain, loss, or deduction relating to or resulting from the ownership of such interest.

Assignor acknowledges and agrees that Assignor shall do, execute, acknowledge and deliver all such further acts, deeds, transfers, assignments, conveyances and assurances for the better assigning, granting, transferring, conveying and conferring unto Assignee, including the Assignee's successors and assigns, all the property hereby granted, transferred, conveyed, assigned and delivered as Assignee or Assignee's successors or assigns shall reasonably require. Assignor hereby binds Assignor and Assignor's successors and assigns to warrant and forever defend title to the above ownership interests unto Assignee and Assignee's successors and assigns against every entity and any other person whomsoever claiming or to claim the same or any part thereof.

**IN WITNESS WHEREOF,** the undersigned does hereby execute this Assignment to be effective as of the _____ day of _____, 2011.

Witnesses

                                      E-BRANDS RESTAURANTS, LLC

_____

_____         By: _____
                                   Name: _____
                                   Title: _____

## ASSIGNMENT AND ASSUMPTION

**THIS ASSIGNMENT AND ASSUMPTION** (this "Assignment") is made and entered into as of the 25th day of February, 2011 (the "Effective Date"), by and between Noble Corporation, a Bahamian IBC ("Assignor") and E-Brands, Inc., a Florida corporation ("Assignee").

## BACKGROUND

A.    Assignor is party to that certain Amended and Restated Membership Interest Purchase Agreement dated February 25, 2011 (the "Contract"), between Assignor and E-Brands Restaurants, LLC, a Florida limited liability company (E-Brands), pursuant to which, subject to certain conditions, Assignor agreed to purchase a membership interest in E-Brands and to become the sole member in E-Brands.

B.    Pursuant to the Contract, Assignor is permitted to assign its rights in the Contract to the Assignee.

C.    Subject to the terms and conditions herein contained, Assignor desires to assign to Assignee all of Assignor's right, title and interest in and to the Contract, and Assignee desires to accept such assignment of the Contract, subject to the terms and conditions contained herein and in the Contract and to assume all of Assignor's obligations under the Contract.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Subject to the terms and conditions herein contained, Assignor agrees, effective as of the Effective Date, to assign, transfer, and convey to Assignee, and Assignee agrees, as of the Effective Date to assume all of Assignor's right, title, interest, duties and obligations in, to and under the Contract, and all claims, rights, benefits and privileges, if any, that Assignor may have or to which Assignor may be entitled under or by virtue of the Contract.

2.    Subject to the terms and conditions herein contained, as of the Effective Date, Assignee shall assume and agrees to perform and observe all agreements, covenants and obligations to be performed and observed by Assignor under the Contract.

3.    Assignor acknowledges that it shall not be released from any obligations, duties, or liabilities under the Contract.

**IN WITNESS WHEREOF**, the parties hereto have executed this Assignment and Assumption of Contract as of the date first above written.

**ASSIGNOR:**                                      **ASSIGNEE:**

NOBLE CORPORATION                    E-BRANDS, INC.

By: _____        By: _____
Name: _Michael I Loyd_                   Name: _____
Title: _President_                              Title: _____

**IN WITNESS WHEREOF**, the parties hereto have executed this Assignment and Assumption of Contract as of the date first above written.

**ASSIGNOR:**                                    **ASSIGNEE:**

NOBLE CORPORATION                    E-BRANDS, INC.

                                                         By: _____
By: _____      Name: _Bahry L. Goff_____
Name: _____      Title: _President_____
Title: _____